# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-2778

_____

|  |  |  |
|---|---|---|
| Ramiro Melecio-Saquil, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an |
| v. | * | Order of the Immigration |
| | * | and Naturalization Service. |
| John Ashcroft, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: February 11, 2003

Filed: July 25, 2003

_____

Before HANSEN,* Chief Judge, LOKEN and SMITH, Circuit Judges.

_____

LOKEN, Chief Judge.

Ramiro Melecio-Saquil is a Guatemalan citizen who entered the United States in 1994 without inspection. He petitions for review of an adverse decision of the Board of Immigration Appeals (BIA). The BIA denied Melecio's application for asylum, withholding of removal, and protection under the Torture Convention. He appeals only the denial of his request for asylum. Because substantial evidence

_____

*The Honorable David R. Hansen stepped down as Chief Judge at the close of business on March 31, 2003. The Honorable James B. Loken became Chief Judge on April 1, 2003.

supports the finding that Melecio lacks a well-founded fear of persecution on account of his political opinion, we deny the petition for review.

Melecio was born in 1969 and lived in the rural Guatemalan Department of Quiche, near the town of Joyabaj. He left Guatemala in 1993, resided briefly in Mexico, and then entered the United States in October 1994. In March 2000, the Immigration and Naturalization Service (INS)[1] issued a Notice to Appear. Melecio appeared, conceded deportability, and requested asylum.

At the February 2001 hearing before an INS immigration judge (IJ), Melicio testified that in 1982 he joined Guatemala's Civil Patrol, a civilian group created by the government to support the military in the conflict with Marxist guerillas who were then a growing threat in rural areas such as Quiche. In the early to mid-1980s, the guerillas came to Melecio's village and tried to persuade him to join them on three separate occasions. After his third refusal, the guerillas said they would kill him if they returned. Melicio fled to Tiquisate, a Guatemalan village that was a six-hour bus ride away from his home, leaving his wife and four children behind.

Melicio testified that he lived in Tiquisate without incident for approximately four years. But when his wife visited and told him that guerillas had been looking for him at home, Melicio left Tiquisate for Mexico. Melicio's wife joined him in the United States in 1999. Their four children and other family members remained in Quiche, Guatemala. Melicio further testified that, about five weeks before the hearing, his mother-in-law called him from Joyabaj to report that four armed men had broken down the door to his in-laws' home the night before, held a gun to his father-

---

[1]The Homeland Security Act of 2002 transferred INS functions to the new Department of Homeland Security, where immigration enforcement functions fall within the Directorate of Border and Transportation Security, while immigration services fall within the Bureau of Citizenship and Immigration Services. The INS will cease to exist when all its functions have been fully transferred.

in-law's forehead, asked about Melecio's whereabouts, and tried to "pick up things in the home."  The men ran away when Melicio's son aroused neighbors.

Subject to certain statutory exceptions, the Attorney General may grant asylum to an alien, such as Melecio, who proves he is a "refugee."  8 U.S.C. § 1158(b)(1).  A "refugee" is defined to include an alien who is unable or unwilling to return to his country of origin "because of persecution or a well-founded fear of persecution on account of . . . political opinion."  8 U.S.C. § 1101(a)(42)(A).  A well-founded fear is one that is both "subjectively genuine and objectively reasonable."  Ghasemimehr v. INS, 7 F.3d 1389, 1390 (8th Cir. 1993).  Melicio alleges that he is entitled to asylum because he has a well-founded fear of persecution on account of his political opinion based on his service in the Civil Patrol and his refusal to join the guerillas.

Before reviewing the IJ's analysis of Melicio's contention, we note a flaw not addressed by the agency.  To warrant asylum on this ground, Melecio must show that the feared persecution is on account of a political opinion.  Supporting the government is political; refusing to join a guerilla fighting force for reasons such as fear of combat is not.  See Miranda v. INS, 139 F.3d 624, 627 (8th Cir. 1998).  In Cordon-Garcia v. INS, 204 F.3d 985, 991 (9th Cir. 2000), on which Melecio relies, it was clear that Guatemalan guerillas persecuted a school teacher because they believed her teaching for the government undermined their political objectives.  Here, on the other hand, even if the guerillas mid-1980's threat amounted to past persecution, Melecio failed to prove the guerillas acted because of his teenage membership in the Civil Patrol, as opposed to his refusal to join their forces for non-political reasons.

Without addressing the above issue, the IJ found that Melecio failed to establish a well-founded fear of persecution if he returned to Guatemala because of the many years that have passed since the guerillas attempted to recruit him, the fact that Melecio later lived in Tiquisate for a number of years without incident, the fact

that his family and his wife's family continued to live safely in Guatemala after his departure, and the dramatic change in the country's conditions after the government and the guerillas signed peace accords in 1996. Relying on State Department reports, the IJ further found that, while violence still occurs in Guatemala, no evidence supports Melecio's assertion that former guerillas seek retribution against those who supported the government prior to the peace accords. The IJ discredited Melecio's uncorroborated testimony regarding the alleged recent incident at his in-laws' home, finding it incredible that masked men would come looking for Melecio after his seven-year absence from the country, and finding no evidence that the men were guerillas seeking retribution for Melicio's refusal to join them in the 1980's. The BIA affirmed without opinion, making the IJ's decision the final agency action for purposes of our judicial review. See 8 C.F.R. § 3.1(a)(7)(iii).

To overturn the IJ's adverse finding, Melecio bears the heavy burden of showing that his evidence "was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992). We must affirm the agency's decision that he is not eligible for asylum if it is supported by substantial evidence on the administrative record considered as a whole. Menjivar v. INS, 259 F.3d 940, 941 (8th Cir. 2001).

On appeal, Melecio first argues the IJ erred by failing to consider documents evidencing continued instability in Guatemala following the peace accords. All the documents are secondary sources discussing conditions in Guatemala generally. Most were first submitted with Melecio's appeal to the BIA and therefore were not part of the record before the IJ, whose decision we are reviewing. Assuming these documents are nonetheless part of the administrative record,[2] they do not affect the

---

[2]When a similar situation arises in a Social Security disability proceeding, the applicable regulations expressly provide that evidence first submitted during the administrative appeal is part of the administrative record for purposes of judicial review. See Browning v. Sullivan, 958 F.2d 817, 823 & n.4 (8th Cir. 1992).

outcome of this appeal. They merely stated that instability and violence continue in Guatemala due to crime, actions of former members of the military or Civil Patrol, and the government's inability to control crime and violence. None asserted that, after the peace accords, former guerillas continued to attack former Civil Patrol members or others who refused to join the guerilla forces. Therefore, this documentary evidence does not establish Melecio's claim of a well-founded fear of persecution on account of his political opinion.

Melecio also testified that armed men recently invaded his in-laws' home in Quiche looking for him, well after the signing of the peace accords. But he did not offer testimony or a written statement from his in-laws or other corroboration. The IJ discredited this testimony, noting that it was "highly suspect and incredible given the change in circumstances in Guatemala, the long period of absence from Guatemala by the respondent, and the lack of any type of independent corroborative evidence." Although an alien need not always corroborate his testimony, it must bear some degree of reliability beyond skeletal, secondhand information. See Nyonzele v. INS, 83 F.3d 975, 983 (8th Cir. 1996). "We defer to an IJ's finding that an alien's testimony is not credible as long as the finding is supported by a specific, cogent reason for disbelief." Ghasemimehr, 7 F.3d at 1391.

After careful review of the record, and putting aside the question whether the guerillas threatened Melicio in the mid-1980's because of his political opinion, we conclude that substantial evidence supports the IJ's finding that Melecio lacks a well-founded fear of political persecution. As he relies primarily on events that happened well over a decade ago, Melecio "must show why these rather dated events provide an objectively reasonable basis for a present fear of particularized persecution directed at [him] personally on the basis of [his] political opinion." Hamzehi v. INS, 64 F.3d 1240, 1243 (8th Cir. 1995) (quotation omitted). Here, as in Menjivar, 259 F.3d at 942, which considered conditions in El Salvador after 1992 peace accords, the record amply supports the IJ's finding that the dramatic changes in Guatemala after

the 1996 peace accords prevent these dated events from translating into an objectively reasonable fear of persecution at this time.

Finally, Melecio argues the IJ erred in finding that he could reduce or eliminate the threat of future persecution by relocating in Guatemala. Because we have upheld the IJ's finding of no well-founded fear of persecution, this additional finding is not essential to the asylum decision. But in any event, substantial evidence supports this finding as well. Melecio safely relocated within Guatemala following the guerillas' threats, and he lived in the village of Tiquisate for four years without incident. The changes in the country's conditions following the 1996 peace accords greatly increase the likelihood that he can again find a safe place to live upon his return. The situation is unlike Singh v. Ilchert, 63 F.3d 1501, 1511 (9th Cir. 1995), where the asylum applicant proved past persecution by the government, and the court "presume[d] that in a case of persecution by a governmental body such as a national police force, the government has the ability to persecute the applicant throughout the country." In this case, Melicio claims a fear of persecution by a guerilla force that, even at its strongest in the early 1980's, did not have the ability to persecute a political opponent country-wide.

For the foregoing reasons, we deny Ramiro Melecio-Saquil's petition for review.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-