# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2944

_____

| | | |
|---|---|---|
| Mohamed El-Sheikh, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| John Ashcroft, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: June 15, 2004
Filed: November 12, 2004

_____

Before LOKEN, Chief Judge, BYE and MELLOY, Circuit Judges.

_____

LOKEN, Chief Judge.

Mohamad A. El Sheikh, a twenty-seven-year-old native of Sudan, entered this country illegally, conceded removability, and requested asylum, withholding of removal, and relief under the Convention Against Torture. After a hearing, the Immigration Judge (IJ) denied relief, and the Board of Immigration Appeals (BIA) affirmed with an opinion. El Sheikh petitions for judicial review of this final order of removal. See 8 U.S.C. § 1252(b). After careful review of the administrative record, we conclude that the denial of El Sheikh's asylum claim is not supported by substantial evidence because there are no express agency findings as to (i) whether El Sheikh's testimony was credible, (ii) whether his testimony that he was twice

detained and beaten by security police on account of his opposition to the government and its civil war policies, if credible, established past persecution, and if so (iii) whether the government rebutted the resulting presumption that El Sheikh has a well-founded fear of future persecution if he is removed to Sudan. Accordingly, we vacate the BIA's order and remand for further administrative proceedings.

## I. The Evidence Submitted by El Sheikh.

At the hearing and in a lengthy affidavit supporting his asylum application, El Sheikh testified that his father is a wealthy businessman of Arab descent living in the capitol city of Khartoum. El Sheikh began college at East Nile University near Khartoum in 1996. Though not a member of any political party, El Sheikh was an active participant in informal student meetings called "Corners of Discussion," which tended to focus on the civil war being waged by the Islamic government against tribal insurgents in the south of Sudan. Because El Sheikh's mother was a member of the Dinka tribe and he had lived and visited in the south, he spoke at many sessions, revealing "the truth about what is happening in the war zone" to groups of up to one hundred students concerned about the costs of the civil war and fearful of being conscripted to fight it.

El Sheikh testified that, in April 1999, security police came to break up a large group of student protesters. El Sheikh was arrested as a leader of the demonstration. He was taken to Kober prison where he was beaten with belts and batons. He and others were held without charges for seven days and then released when their families complained. El Sheikh further testified that, in December 1999, he was arrested again by the security police while distributing anti-government flyers outside the university. He was detained at a "ghost house" without charges for thirty-five days, enduring repeated beatings, inadequate food, and long periods in the sun without protection. He was released only after signing a statement promising not to distribute anti-government flyers or to speak at the Corners of Discussion again. After this lengthy

detention, government security officers "followed [his] every move" and harassed and interrogated him until he quit school and decided to leave the country.

El Sheikh testified that his brother's friend in Sudan's passport office helped obtain a passport and visa to South Korea. The documents fraudulently described El Sheikh as a "sales manager" because travel documents were not issued to students. El Sheikh then traveled to South Korea, where he stayed for three months with a family friend and businessman. He eventually obtained a tourist visa to Honduras and took a plane from South Korea to Honduras with a stop in Los Angeles, intending to enter the United States at Los Angeles without valid entry documents and to seek asylum. He denied traveling to South Korea to work or to look for work.

El Sheikh submitted extensive background information on Sudan, including Department of State reports that confirmed the Sudanese government's practice of arresting students who opposed the government and detaining them without charges in "ghost houses," where they were abused and beaten. El Sheikh also presented the testimony of a Sudanese native who was an organizer for an opposition political party at three universities in the mid-1990's, including East Nile University. Before coming to the United States in 1998, where he was granted asylum, this witness testified that he had met El Sheikh through this "opposition work," directed El Sheikh to speak at various "Political Corners," and saw El Sheikh actively speak against the government at such meetings. He also confirmed that the anti-government activists included students who were not affiliated with any opposition party. After leaving Sudan the witness heard that student activists were arrested at East Nile University, but he had no personal knowledge that El Sheikh was arrested in 1999.

## II. The Agency's Decision.

After summarizing the evidence in considerable detail, the IJ denied all of El Sheikh's claims. The IJ found "palpable" discrepancies between El Sheikh's

testimony and his earlier "credible fear" interview because El Sheikh told the asylum officer that he was not participating in the student "riot" when arrested in April 1999, and that he was merely "talking with friends" on campus when arrested in December 1999. The IJ expressed "some concerns" as to whether El Sheikh "was actually fleeing Sudan" when he went to South Korea. Noting that El Sheikh presented no medical evidence of significant injuries or "any real corroboration that [he] was harmed by the government of Sudan," that El Sheikh was permitted to attend the university and to leave the country, and that his participation in political activities was "relatively minimal," the IJ concluded that El Sheikh "has simply not met his burden of proof to establish that he has a persecution claim in Sudan."

The BIA affirmed. In the critical portion of its short opinion, the BIA stated:

> [The IJ] did not make an express credibility finding. Even if [El Sheikh] is credible, we agree with the [IJ] that [El Sheikh] did not sustain his burden of proving eligibility for relief.
>
> With regard to [El Sheikh's] claim of past persecution on account of his political opinion, in light of the questions regarding [his] testimony, we consider [his] corroborative evidence to determine whether he met the burden of proof. We find that [El Sheikh] failed to submit reasonably available corroborative evidence. Although [he] presented witness testimony, the witness left Sudan prior to [El Sheikh's] problems and could not corroborate the harm suffered by [El Sheikh]. (Citations omitted).

## III. Discussion.

The Attorney General may, in his discretion, grant asylum to a "refugee." 8 U.S.C. § 1158(b)(1). A refugee is defined as an alien who is outside his native country and is unable or unwilling to return to that country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality,

membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To show a well-founded fear of persecution, an alien must show that the fear is both subjectively genuine and objectively reasonable. Proof of past persecution creates a rebuttable presumption that the alien has a well-founded fear of future persecution. See Shoaira v. Ashcroft, 377 F.3d 837, 844 (8th Cir. 2004); 8 C.F.R. § 208.13(b). "In a close case, the question of past persecution . . . may well be critical, because it determines whether the INS or the asylum applicant has the burden of proof" on issues such as changed country conditions and the alien's ability to safely relocate in his native country. Hagi-Salad v. Ashcroft, 359 F.3d 1044, 1049 (8th Cir. 2004).[1] We review the BIA's determination that El Sheikh is not eligible for asylum under the deferential substantial evidence standard. Nyama v. Ashcroft, 357 F.3d 812, 815-16 (8th Cir. 2004).

Because the IJ made no express credibility finding, the BIA assumed El Sheikh's testimony was credible but concluded that the testimony was insufficiently corroborated. On the issue of past persecution, the BIA discounted El Sheikh's testimony of two lengthy detentions and beatings because his supporting witness left Sudan before 1999 and therefore "could not corroborate the harm." The BIA did not otherwise explain what "reasonably available corroborative evidence" was missing.

In Matter of S-M-J, 21 I&N Dec. 722 (BIA 1997) (en banc), the BIA discussed at length issues relating to the evidentiary requirements in asylum and withholding of deportation cases. As relevant here, the BIA explained:

---

[1]Note that the statutory definition of refugee places no emphasis on *why* the alien is outside his native country. Thus, the IJ's preoccupation with whether El Sheikh was fleeing Sudan when he went to South Korea, an issue that is heavily emphasized by the government on appeal, is irrelevant except to the extent it sheds light on whether El Sheikh has a subjectively well-founded fear of future persecution if he is removed to Sudan. But that becomes a non-issue if proof of past persecution creates a presumption that his fear is well-founded.

The burden of proof is on an applicant to establish her asylum claim. We held in *Matter of Dass*, 20 I&N Dec. 120 (BIA 1989), that an alien's own testimony may in some cases be the only evidence available, and it can suffice where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis of the alien's alleged fear.

\* \* \* \* \*

Where the record contains general country condition information, and an applicant's claim relies primarily on personal experiences not reasonably subject to verification, corroborating documentary evidence of the asylum applicant's particular experience is not required. Unreasonable demands are not placed on an asylum applicant to present evidence to corroborate particular experiences (e.g., corroboration from the persecutor). However, where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided. That is, an asylum applicant should provide documentary support for material facts which are central to his or her claim and easily subject to verification, such as evidence of his or her place of birth, media accounts of large demonstrations, evidence of a publicly held office, or documentation of medical treatment. . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof.

21 I&N Dec. at 724-26. The Ninth Circuit has rejected the principle that an asylum applicant may be required to corroborate credible testimony: "this court does not require corroborative evidence from applicants . . . who have testified credibly." Ladha v. I.N.S., 215 F.3d 889, 899 (9th Cir. 2000) (quotation omitted); see Abovian v. I.N.S., 257 F.3d 971, 973-74 (9th Cir. 2001) (Kozinski, J., dissenting from the denial of rehearing en banc on this issue). El Sheikh urges us to adopt the Ninth Circuit position, but we join the Second Circuit and the Third Circuit in declining to do so. See Diallo v. I.N.S., 232 F.3d 279, 285-86 (2d Cir. 2000), followed in Abdulai v. Ashcroft, 239 F.3d 542, 551, 554 (3rd Cir. 2001).

Though we accept the BIA's position regarding corroborative evidence as articulated in S-M-J, we also agree with the Second Circuit and the Third Circuit that a particular decision denying asylum eligibility because of the absence of corroborating evidence cannot be sustained if "the BIA failed to: (1) rule explicitly on the credibility of [the applicant's] testimony; (2) explain why it was reasonable in this case to expect additional corroboration; or (3) assess the sufficiency of [the applicant's] explanations for the absence of corroborating evidence." Diallo, 232 F.3d at 287; accord Abdulai, 239 F.3d at 554; Qiu v. Ashcroft, 329 F.3d 140, 153 (2d Cir. 2003); Alvarado-Carillo v. INS, 251 F.3d 44, 54 (2d Cir. 2001). In this case, El Sheikh testified that, on two separate occasions, he was arrested while engaged in anti-government student activities, held without charges for lengthy periods (once for thirty-five days in a "ghost house"), and repeatedly beaten. The BIA apparently considered this testimony, in the words of S-M-J, "sufficiently detailed to provide a plausible and coherent account of the basis of the alien's alleged fear." The IJ noted inconsistencies in El Sheikh's various accounts of what he was doing when arrested, but his interviews and testimony were consistent in describing the nature of the government abuse, when and where it occurred, and the apparent motivation of the abusers -- to crush political dissent. Though the BIA noted "questions regarding [El Sheikh's] testimony," it rejected the claim of past persecution solely because he "failed to submit reasonably available corroborative evidence."

El Sheikh presented documentary evidence that he attended the East Nile University. A witness identified El Sheikh as an anti-government activist at the university who did not belong to an organized political party. What other reasonable corroborating evidence of this particular claim of past persecution does the BIA require? One may expect that arrests without charges will not be documented. Likewise, detentions and beatings at "ghost houses" -- a practice confirmed by

-7-

Department of State reports[2] -- are by their nature secretive. El Sheikh submitted no evidence of medical treatment, but severe bruises and a bloody nose may not require medical treatment when the victim is released from detention some days later. The Corners of Discussion sessions at the university might or might not have been prominent enough to attract media attention, assuming the repressive Sudan government would have allowed such publicity. Lacking a BIA finding as to El Sheikh's credibility and an analysis of what material facts central to his claim of past persecution should have been reasonably corroborated, "we have no way of reviewing the Board's actual reasoning." Abdulai, 239 F.3d at 555.

For these reasons, we must remand to the BIA for further proceedings. Though we do not direct the agency how to proceed on remand, we see the need for a sequence of additional findings by the BIA (or by the IJ on remand from the BIA):

- was El Shiek's testimony of abuse inflicted on him by the Sudanese security police credible;

- if so, did El Sheikh fail to present reasonably available documentary support for material facts which are central to this claim of past persecution on account of his political opposition to the government and its policies;

- if the testimony was credible and adequately corroborated, does it establish past persecution;

- if so, has the government rebutted the resulting presumption that El Sheikh has a well-founded fear of future persecution if removed to Sudan?

---

[2]The 2000 Country Report on Sudan states: "Security forces beat and otherwise abused youths and student leaders . . . who are deemed to be opponents of the government. . . . There continued to be reports that security forces used 'ghost houses' . . . where security forces tortured and detained government opponents incommunicado under harsh conditions."

We express no views on these questions, nor do we limit the BIA's discretion to allow the submission of further evidence, for example, evidence of current conditions in Sudan.  See I.N.S. v. Ventura, 537 U.S. 12, 18 (2002).  Given our disposition of the asylum appeal, we remand the denial of withholding of removal and relief under the Convention Against Torture as well.

_____