# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1176

_____

| | | |
|---|---|---|
| Ahmad Ahmadshah, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of a |
| v. | * | Decision of the Board of |
| | * | Immigration Appeals. |
| John Ashcroft, Attorney General | * | |
| of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: November 17, 2004
Filed: February 1, 2005

_____

Before WOLLMAN, HEANEY, and FAGG, Circuit Judges.

_____

HEANEY, Circuit Judge.

Ahmad Ahmadshah, a 42-year-old citizen of Afghanistan, entered the United States in 1996 as a non-immigrant fiance′. In 2000, the government began removal proceedings against Ahmadshah. He conceded removability, but sought asylum, withholding of removal, and relief under the Convention Against Torture. An immigration judge (IJ) denied the application and the Board of Immigration Appeals (BIA) affirmed. Ahmadshah appeals. We conclude that the denial of asylum is not supported by substantial evidence because 1) there were no findings as to whether Ahmadshah's testimony was credible, 2) the BIA failed to consider the impact of his sister's murder on Ahmadshah's claim for asylum, and 3) the BIA did not consider

whether the treatment of apostates in Afghanistan has changed with the transition in Afghanistan's government. Accordingly, we vacate the BIA's order and remand for further administrative proceedings.

## BACKGROUND

At his hearing, Ahmadshah testified that he converted to Christianity in 1988 while living in Kabul. He and his sister secretly studied the Bible in their home, but did not attend any church services in Afghanistan because there were no active churches in the area. In April 1993, Ahmadshah's parents were killed in their home by a rocket attack. After the attack, armed local militiamen searched the house and found the Bibles containing the names of Ahmadshah and his sister. The militiamen beat Ahmadshah with a gun and warned him not to engage in Christian activities again. Ahmadshah showed the IJ scars from the beating, including a two-inch scar on his right shin. After this incident, Ahmadshah fled the area and hid with friends in a town nearby. Through a cousin, he learned that the militia had killed his sister two days after he fled and were searching for him. Ahmadshah testified that his sister was killed because her name was in one of the Bibles.

Ahmadshah fled to Pakistan and then traveled to Russia. He lived in St. Petersburg from 1993 to 1996, but did not apply for asylum because Russia was not accepting refugees at that time. In 1996, Ahmadshah entered the United States on a non-immigrant, fiance′ visa but did not marry his fiance′e. He subsequently married another United States citizen.[1] Ahmadshah testified that he has attended the Saint Maria Church in Minneapolis for the past four years. He submitted records and photographs showing that he was baptized in January 2001, is a registered member of the church, and has made regular donations to the church. At his hearing,

---

[1]Because Ahmadshah did not marry the person listed on his fiance′ visa, he is not eligible to apply for permanent status from the United States.

Ahmadshah also offered evidence that apostasy, the abandonment of Islam, is a capital crime under Shari'a law, and that the militia that threatened him still operate in Afghanistan.

The IJ determined that Ahmadshah was not credible regarding the death of his sister because he had not obtained information about his sister's death nor had he contacted family members after leaving Afghanistan. The IJ questioned Ahmadshah's commitment to Christianity in light of his lack of religious involvement in Russia, noting his current involvement in the church was limited to attending services on Sunday, and that he had not attended classes or studies before his baptism. The IJ concluded that Ahmadshah had not shown past persecution or a well-founded fear of future persecution, citing the change of government in Afghanistan and Ahmadshah's limited commitment to Christianity. On review, the BIA affirmed the IJ and adopted his decision, holding that Ahmadshah, even if credible, had not shown mistreatment rising to the level of past persecution, and did not have a well-founded fear of future persecution due to the changed conditions in Afghanistan.

## ANALYSIS

The Attorney General may grant asylum to a refugee. 8 U.S.C. § 1158(b)(1). A refugee is an alien who is unwilling or unable to return to his country of origin due to "persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1101(a)(42)(A). The alien's fear of persecution must be both "subjectively genuine and objectively reasonable." Perinpanathan v. INS, 310 F.3d 594, 598 (8th Cir. 2002). "Proof of past persecution creates a rebuttable presumption that the alien has a well-founded fear of future persecution." El-Sheikh v. Ashcroft, 388 F.3d 643, 646 (8th Cir. 2004). "'In a close case, the question of past persecution . . . may well be critical, because it determines whether the INS or the asylum applicant has the burden of proof' on issues such as changed country conditions." Id. (quoting Hagi-

Salad v. Ashcroft, 359 F.3d 1044, 1049 (8th Cir. 2004)). We review the BIA's factual determinations considering the record as a whole, and overturn only if the decision is not supported by reasonable, substantial, probative evidence. Perinpanathan, 310 F.3d at 597.

Initially, we note the BIA's assumption that Ahmadshah's testimony was credible, and its acceptance that his conversion to Christianity was sincere.[2] Ahmadshah testified that he was beaten by the local militia because of his religious beliefs, specifically because the militia found his name in a Bible in the ruins of his parents' home. Were this the only incident in the record, we would agree that Ahmadshah did not establish a finding of past persecution. Corado v. Ashcroft, 384 F.3d 945, 947 (8th Cir. 2004). This was a single attack, on a single day, in which the petitioner did not lose consciousness or suffer severe injury. Ahmadshah, however, also testified that his sister was killed days after this beating because her name was written in a Bible found in their home and that the militia were looking for him after the killing. Acts of violence against family members may demonstrate persecution if they show a pattern of persecution tied to the petitioner. Nyonzele v. INS, 83 F.3d 975, 983 (8th Cir. 1996). The murder of Ahmadshah's sister points to a pattern of violence perpetrated against Christian converts, and was coupled with a threat

---

[2]We are troubled by the IJ's conclusion that Ahmadshah had not demonstrated a commitment to Christianity. The transcript shows that serious errors in translation limited Ahmadshah's ability to communicate to the IJ his understanding of Christian concepts or beliefs. We are also not convinced that a detailed knowledge of Christian doctrine is relevant to the sincerity of an applicant's belief; a recent convert may well lack detailed knowledge of religious custom. Even if Ahmadshah did not have a clear understanding of Christian doctrine, this is not relevant to his fear of persecution. Under Shari'a law, it is apostasy–the rejection of Islam–and not conversion that is punishable. If Ahmadshah has shown that Afghans would believe that he was an apostate, that is sufficient basis for fear of persecution under the law. Najafi v. INS, 104 F.3d 943, 948 (7th Cir. 1997). Because the BIA assumed in its opinion that Ahmadshah was credible, we do not further address this issue.

-4-

directed at Ahmadshah himself. Assuming Ahmadshah's credibility, as the BIA did, this murder and the threat to Ahmadshah establish past persecution. Corado, 384 F.3d at 947 (recognizing that persecution includes the threat of death on account of the factors listed in the statute).

The BIA concluded that, even if credible, Ahmadshah's testimony was not detailed enough to support a finding of past persecution. The BIA, however, considered only Ahmadshah's beating, and did not address whether the murder of his sister showed past persecution of Ahmadshah. It is not clear what additional detail the BIA could reasonably require. While the testimony is limited, we have held that documentation is not always required to corroborate the testimony of a person seeking asylum. See Zewdie v. Ashcroft, 381 F.3d 804, 809 (8th Cir. 2004) (finding it unreasonable to expect an applicant to meet the "extraordinary level of corroborating evidence demanded by the BIA"); Bellido v. Ashcroft, 367 F.3d 840, 844 (8th Cir. 2004) ("It is often impossible for an asylum applicant to obtain corroborating evidence from his home country."). Ahmadshah is not required to present corroboration from his persecutors. El-Sheikh, 388 F.3d at 646. Documents would be difficult to obtain in any case, given the chaotic situation, limited infrastructure, and subsequent change in the government of Afghanistan. Ahmadshah's testimony has been consistent, and is generally corroborated by country reports describing harsh treatment of apostates in Afghanistan. Given the BIA's assumption of credibility, his testimony appears sufficient to support a claim of past persecution. 8 C.F.R. § 208.13(a). We therefore remand to determine whether Ahmadshah's testimony was credible.

Ahmadshah's fear of future persecution also was not adequately addressed by the BIA. Ahmadshah has shown that he is a convert to Christianity, and that under Shari'a law such conversion (apostasy) is punishable by death. The government has not shown that this legal system has changed since the fall of the Taliban. The change in government does not remove the presumption of a well-founded fear of

persecution, as the transition in political leadership does not address Ahmadshah's specific concern that he may be legally subject to death for his religious beliefs under Afghanistan's current laws. See Fergiste v. INS, 138 F.3d 14, 19 (1st Cir.1998) ("changes in country conditions must be shown to have negated the particular applicant's well-founded fear of persecution"). As the Seventh Circuit observed in a factually similar case, "the death penalty on the books alone carries weight in establishing a fear of persecution." Najafi, 104 F.3d at 948 n.5. The government's evidence of changed conditions does not address the fear of persecution for apostasy. Assuming, as the BIA did, that Ahmadshah is credible, he has shown past persecution, and the government has not rebutted the presumption that he has a well-founded fear of future persecution. El-Sheikh, 388 F.3d at 646-47.

In addition, when a government has a pattern and practice of persecuting a group of persons, a person within that group may be entitled to asylum, despite a lack of evidence that he will be singled out for persecution. Membership in a persecuted group may entitle a person to asylum. 8 CFR § 208.13(b)(2)(iii). In order to find that there is a pattern or practice of persecution, the petitioner must show that there was "organized or systematic or pervasive persecution." Makonnen v. INS, 44 F.3d 1378, 1383 (8th Cir. 1995). Ahmadshah has offered evidence that the law of Afghanistan subjects apostates to the death penalty, which is an objectively reasonable basis for having a well-founded fear of persecution. See Bastanipour v. INS, 980 F.2d 1129, 1133 (7th Cir. 1992). While the BIA and IJ may find that a law is not enforced, and therefore not a basis for fear of persecution, in this case the BIA and IJ simply did not discuss the treatment of apostates in Afghanistan.

## CONCLUSION

For these reasons, we reverse the order of the immigration service and remand to the BIA for further proceedings consistent with this opinion. The BIA is free to allow the submission of further evidence on the current conditions in Afghanistan.

Given our disposition of the asylum appeal, we remand the denial of withholding of removal and relief under the Convention Against Torture as well.

_____