# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4117

_____

| | | |
|---|---|---|
| Zoumade Madjakpor, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| | * | On Petition for Review From |
| v. | * | an Order of the Board of |
| | * | Immigration Appeals. |
| Alberto Gonzales,[1] Attorney General of | * | |
| the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: December 17, 2003
Filed: May 11, 2005

_____

Before MELLOY, McMILLIAN, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Zoumade Madjakpor, a native of Togo, entered the United States illegally in 1989. In 1999, Madjakpor was charged with removability for having entered the United States without being admitted or paroled. See 8 U.S.C. § 1182(a)(6)(A)(i). He conceded removability, but requested withholding of removal and relief under the Convention Against Torture (CAT). He also requested voluntary departure in the event that withholding of removal and relief under the CAT were denied. The Board

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Alberto Gonzales is substituted automatically for his predecessor, John Ashcroft, as respondent.

of Immigration Appeals (BIA) affirmed the Immigration Judge's (IJ) denial of relief and ordered Madjakpor removed to the Ivory Coast—where he had lived for approximately twenty years—or to Togo if the Ivory Coast refused to accept him. The BIA also affirmed the denial of Madjakpor's request for voluntary departure. Madjakpor petitioned for review of the BIA's denial of relief with respect to Togo, but did not challenge the BIA's denial of relief with respect to the Ivory Coast. He also challenged the BIA's denial of his request for voluntary departure.

In an earlier opinion, we dismissed Madjakpor's petition for review of the BIA's denial of his request for voluntary departure, holding that 8 U.S.C. § 1229c(f) precluded review. Madjakpor v. Ashcroft, No. 02-4117, 2004 WL 1146135 (8th Cir. May 24, 2004) (unpublished). We held in abeyance Madjakpor's request for withholding of removal and relief under the CAT with respect to Togo pending the outcome of the Attorney General's efforts to remove Madjakpor to the Ivory Coast. Because the Ivory Coast has declined to accept Madjakpor, we now proceed with Madjakpor's petition for review regarding the suitability of Togo as a country of removal.

Madjakpor was born in Togo in 1951 and moved to the Ivory Coast at age fifteen or sixteen to live with his uncle and attend technical school. He graduated from technical school and, in 1974, obtained a business license from the government of the Ivory Coast and opened a carpentry business. Madjakpor obtained a temporary resident certificate from the Ivory Coast government. He did not, however, pursue a permanent resident certificate because he was "busy with . . . work and . . . a little lazy." Admin. Rec. at 131–32. He continued to live and work in the Ivory Coast until his 1989 arrival in the United States. Many of Madjakpor's relatives—including seven children—reside in the Ivory Coast.

Although some members of Madjakpor's family remained in Togo and were politically active against the government of President Gnassingbe Eyadema,[2] Madjakpor was not a member of any political organizations while residing in Togo. One of Madjakpor's sisters died at a demonstration in Togo around 1985, and his father, an opponent of President Eyadema's administration, was arrested and detained for one month in 1994. Shortly after his release, Madjakpor's father was admitted to a hospital where it was discovered that he had been poisoned. He died as a result of the poisoning. Madjakpor's uncles were killed when they "fell into this gun battle" at the border of Ghana and Togo on their way to attend the funeral of Madjakpor's father. Id. at 147.

Sometime in the early 1980s, while residing in the Ivory Coast, Madjakpor joined a group of Togolese that originally formed to provide general assistance to fellow Togolese living in the Ivory Coast. In 1985, a leader of this group asked Madjakpor—and Madjakpor agreed—to drive a truck carrying weapons and ammunition from the Ivory Coast into Togo for use in a plot to overthrow the Togolese government. In 1987, a member of the group was detained and tortured while vacationing in Togo. Madjakpor believes that this individual may have disclosed Madjakpor's name while being tortured and that other members of the group may have disclosed his name to the government. Family members still residing in Togo have warned Madjakpor that he is being sought by the government.

In 1987 or 1988, Madjakpor, while still residing in the Ivory Coast, went to a bar in Togo where he and his friends were detained briefly and questioned by authorities. Madjakpor was not mistreated and was released the next day. Madjakpor returned to Togo again in 1989 in order to obtain identification papers. He applied for these papers without incident, but soldiers went to his grandmother's house after the papers were issued. Madjakpor does not contend that he was ever imprisoned or

---

[2]President Eyadema died on February 5, 2005.

-3-

tortured on account of his political opinions or activities while he was living in or visiting Togo.

At a preliminary removal hearing, the IJ requested that Madjakpor "make an effort" to obtain a "statement from a family member or eye witness" to the events surrounding the deaths of Madjakpor's father and sister. Id. at 97. The IJ also asked for some evidence regarding Madjakpor's political activities. Madjakpor did not supply the requested information at his March 8, 2000, removal hearing or establish that he had made an effort to obtain it. Madjakpor did submit a 1998 Department of State Country Report on Togo and a 1999 Amnesty International report in support of his claims.

The IJ concluded that Madjakpor's testimony and documentary evidence were insufficient to sustain his burden of proving there was a clear probability he would be persecuted if returned to Togo. The BIA affirmed. Madjakpor now appeals, arguing that the BIA erred in concluding that his evidence was insufficient to establish that it was more likely than not he would be subject to persecution on the basis of his political opinion or activities if he were returned to Togo.

We review the BIA's determination that an alien is not eligible for withholding of removal under the deferential substantial evidence standard. Ismail v. Ashcroft, 396 F.3d 970, 974 (8th Cir. 2005). When the BIA has denied withholding of removal, the petitioner bears the heavy burden of showing that his evidence was "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Melecio-Saquil v. Ashcroft, 337 F.3d 983, 986 (8th Cir. 2003) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 483–84 (1992)); see 8 U.S.C. § 1252(b)(4). We affirm if the BIA's decision is supported by "reasonable, substantial, and probative evidence" on the record as a whole. Regalado-Garcia v. INS, 305 F.3d 784, 787 (8th Cir. 2002) (citing Elias-Zacarias, 502 U.S. at 481). Because the BIA affirmed the IJ's decision for the reasons stated therein, we review both the IJ's and the BIA's decisions

-4-

together.  See Krasnopivtsev v. Ashcroft, 382 F.3d 832, 837 (8th Cir. 2004).  After careful review of the record, we cannot say that the administrative decision is unsupported by reasonable, substantial, and probative evidence on the record as a whole.

Removal to a specific country must be withheld if an alien establishes a clear probability that he will face persecution in that country because of his race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. § 1231(b)(3); see Mwangi v. Ashcroft, 388 F.3d 623, 628 (8th Cir. 2004). In other words, an alien must prove that it is more likely than not that he will be persecuted if returned to the country of removal.  Persecution is the "infliction or threat of death, torture, or injury to one's person or freedom, on account of" a protected characteristic. Regalado-Garcia, 305 F.3d at 787.  Low-level intimidation and harassment alone do not rise to the level of persecution, Zakirov v. Ashcroft, 384 F.3d 541, 546 (8th Cir. 2004), nor does harm arising from "general conditions such as anarchy, civil war, or mob violence" ordinarily support a claim of persecution, Mohamed v. Ashcroft, 396 F.3d 999, 1003 (8th Cir. 2005).  An alien bears the burden of proving eligibility for withholding of removal.  8 C.F.R. § 1208.16(b); Rife v. Ashcroft, 374 F.3d 606, 610 (8th Cir. 2004).

Madjakpor argues that the IJ erred in concluding he did not establish that it was more likely than not he would be persecuted if returned to Togo.  According to Madjakpor, the evidence he presented establishes that it is clearly probable he will be "identified, detained, and killed by the government" if he is returned to Togo. Brief for Petitioner at 12.  The evidence that Madjakpor presented falls short of proving a clear probability that he will be persecuted if returned to Togo.  Madjakpor makes no claim that he has been subjected to persecution by the Togolese government on the basis of his political opinion or activities.  Rather, Madjakpor cites the events surrounding his sister's death in 1985 and his father's death in 1994, his belief that the authorities are aware of his involvement in the weapons-delivery incident in 1985,

and general country conditions as the "reasonable, substantial and probative evidence" necessary to carry his burden of proof. This evidence is not so compelling that no reasonable factfinder could fail to find the requisite probability of persecution.

While the IJ determined that Madjakpor's testimony was credible, he nevertheless was "troubled by the lack of evidence" in the case and found that Madjakpor had not "reasonably explained his failure to obtain evidence such as affidavits from relatives . . . concerning the critical facts" of his case. Admin. Rec. at 75. In In re S-M-J, 21 I. & N. Dec. 722, 725 (BIA 1997) (en banc), the BIA held that "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided" even if an alien's testimony is found credible. The IJ noted that Madjakpor did not provide or attempt to provide affidavits or other documentation to substantiate his accounts of the arrest, detention, or death of his father; the death of his sister; the torture and death of the resistance group member; or Madjakpor's own involvement in the resistance group. Madjakpor argues that it was error for the IJ to consider the absence of corroboration in finding that his evidence was insufficient. We disagree.

In El-Sheikh v. Ashcroft, 388 F.3d 643, 647 (8th Cir. 2004), we addressed the issue of corroborating evidence in the case of an alien whose testimony was found credible. We accepted the BIA's position as articulated in In re S-M-J, but concluded that we would sustain a BIA decision denying relief because of the absence of corroboration only if the BIA (1) ruled explicitly on the credibility of the alien's testimony; (2) explained why it was reasonable to expect corroboration; and (3) assessed the sufficiency of the alien's explanations for the absence of corroboration. El-Sheikh, 388 F.3d at 647.

In this case, the IJ specifically found that Madjakpor's testimony was credible but found that Madjakpor's failure to make any attempt to contact relatives, business associates, or members of the resistance group living in the Ivory Coast to obtain

statements or other documentary evidence corroborating his testimony was unreasonable. Madjakpor testified that he was unable to obtain or even request this information because he was incarcerated, an explanation the IJ apparently found unavailing. While we recognize that it is often impossible for an alien to obtain corroborating evidence from his home country, Bellido v. Ashcroft, 367 F.3d 840, 844 (8th Cir. 2004), and that an alien is not required to present corroboration from his persecutors, Ahmadshah v. Ashcroft, 396 F.3d 917, 921 (8th Cir. 2005), we are unpersuaded that the IJ erred in requesting corroborating evidence from Madjakpor or in discounting Madjakpor's version of events in the absence of such evidence.

In addition to the absence of corroborative evidence, the IJ noted that Madjakpor made at least two trips into Togo after the 1985 weapons-delivery incident, despite his claimed fear of death. In neither case was Madjakpor subjected to the level of persecution that is sufficient to make an alien eligible for withholding of removal. During one visit, he was briefly detained and questioned by authorities but not mistreated. During the other visit, he applied for and received identification papers issued by the very government he claims to fear. If Madjakpor believed that the authorities were looking to detain and kill him, it is not likely that he would have given them these opportunities to succeed. Madjakpor was not arrested during these earlier visits to Togo and he has failed to demonstrate an objectively reasonable fear that he will be arrested now. See Melecio-Saquil, 337 F.3d at 987; Regalado-Garcia, 305 F.3d at 788 (noting that fear of persecution was not shown to be objectively reasonable where more than a decade had passed since alien was a member of resistance group).

Although Madjakpor provided the 1998 Department of State Report on Togo and a 1999 Amnesty International report on Togo as evidence of the generally poor human rights record of the Togolese government, these reports are not sufficient evidence to support his claim that it is clearly probable he will be singled out and persecuted on account of his political opinion or activities. See Mwangi, 388 F.3d

at 628; Eusebio v. Ashcroft, 361 F.3d 1088, 1092 (8th Cir. 2004) (noting that, while the political situation in Togo was "hardly optimal," country reports indicated that "many citizens of Togo engage in opposition politics without suffering persecution").

Madjakpor also contends that the BIA improperly denied withholding of removal to Togo based on the IJ's finding that Madjakpor firmly resettled in the Ivory Coast before coming to the United States. Firm resettlement does not bar a claim for withholding of removal or relief under the CAT. See Rife, 374 F.3d at 610–13; Salazar v. Ashcroft, 359 F.3d 45, 52 (1st Cir. 2004) (citing cases). Whether Madjakpor resettled in the Ivory Coast, therefore, is not relevant to his application for withholding of removal or relief under the CAT with respect to Togo. Although the BIA discussed Madjakpor's twenty-year residency in the Ivory Coast in its opinion denying withholding of removal to Togo, it ultimately based its decision on Madjakpor's failure to establish a clear probability that he would be subjected to persecution if returned to Togo.

Finally, Madjakpor argues that the BIA erred in denying him relief under Article III of the CAT. An alien is eligible for relief under the CAT if he shows that it is more likely than not that he would be tortured if removed to the proposed country of removal. 8 C.F.R. § 208.16(c)(2). Torture is narrowly defined as an extreme form of cruel and inhuman treatment intentionally inflicted by or with the acquiescence of a person acting in an official capacity. Id. § 208.18(a). A denial of relief under the CAT is reviewed to determine whether the evidence was so compelling that a reasonable factfinder must have found the alien entitled to relief. Ngure v. Ashcroft, 367 F.3d 975, 992 (8th Cir. 2004). Madjakpor presented no evidence other than the testimony and documents discussed above to support his claim for relief under the CAT. For the reasons Madjakpor failed to carry his burden for withholding of removal, he likewise fails to carry his burden for relief under the CAT. See Alemu v. Gonzales, No. 03-3464, 2005 WL 783087, at *3 (8th Cir. Apr. 8, 2005).

In conclusion, we cannot say that Madjakpor presented the reasonable, substantial, and probative evidence necessary to compel a conclusion that it is more likely than not that he will be subjected to persecution or torture if he is returned to Togo. Accordingly, Madjakpor's petition for review is denied.

MELLOY, Circuit Judge, Dissenting.

I believe the evidence compels a finding that Mr. Madjakpor holds a well-founded fear of persecution upon his return to Togo. As noted by the majority, the IJ specifically found Mr. Madjakpor to be credible. Mr. Madjakpor provided detailed testimony regarding his own and his family's experiences in Togo, including the deaths of his father and sister and the torture of his associate. This testimony, accepted as credible and viewed in light of the other evidence, places a burden on the BIA to explain why a demand for corroboration is reasonable and why Mr. Madjakpor's explanations for the absence of corroboration are insufficient. El-Sheikh, 388 F.3d at 647. I do not believe the BIA met this burden. As such, it was error not to rely on Mr. Madjakpor's credible testimony. I would grant his request for withholding of removal.

_____