NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0667n.06

Case No. 10-4516

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 21, 2012*

LEONARD GREEN, Clerk

MANISHKUMAR PATEL,               )
                                 )
        Petitioner,              )
                                 )
                                 )        ON PETITION FOR REVIEW
        v.                       )        OF A DECISION OF THE
                                 )        BOARD OF IMMIGRATION
ERIC H. HOLDER, JR.,             )        APPEALS
Attorney General,                )
                                 )
        Respondent.              )
                                 )

_____

BEFORE:  BATCHELDER, Chief Judge; CLAY and GILMAN, Circuit Judges.

ALICE M. BATCHELDER, **Chief Judge.**  Petitioner Manishkumar Patel illegally entered

the United States in 1995 and was arrested for doing so in 2008.  To prevent his being removed from

the country, Patel applied for asylum, withholding of removal, protection under the Convention

Against Torture, and cancellation of removal.  The Immigration Judge denied his four applications

and ordered him returned to India, his home country.  The Board of Immigration Appeals affirmed.

He now petitions this Court for review.  Because we lack jurisdiction to review half of the denials

and find the other half supported by substantial evidence, we DISMISS his petition.

**I.**

Patel is a native and citizen of India.  In May 1995, he entered the United States without

having been admitted or paroled after inspection.  He lives with his girlfriend, Aruna Patel

("Aruna"), who is also currently facing removal proceedings.  Patel and Aruna have two American-

born, U.S. citizen daughters, Pooja (born July 12, 2006) and Shraya (born March 31, 2008). While Patel has not returned to India since 1995, he has sent both daughters on individual, year-long trips to visit his parents in India. Each visit started when the daughter was about 6 months old.

On August 24, 2008, a Department of Homeland Security ("DHS") official apprehended Patel and Aruna at a bus station in Rochester, New York. Patel admitted having no lawful right to be in the United States. On that same day, DHS filed a Notice to Appear charging Patel with removability. Patel conceded removability, but then applied for asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), and cancellation of removal.

On January 4, 2010, the Immigration Judge ("IJ") conducted a removal hearing. At the hearing, Patel testified that he was a member of India's Bharatiya Janata Party ("BJP") from 1990 to 1995, and that he worked for the party by passing out campaign propaganda. According to Patel, members of the rival Congress Party frequently threatened and subjected him to verbal abuse, and warned that he must leave the BJP or be killed. Patel, a Hindu, said that the BJP was a political party that sought to help everyone, and that though the Congress Party was not explicitly Muslim, it sought to help only Muslims. He also testified that his family lived across the street from a mosque and was subjected to verbal abuse and occasional rock throwing by Muslims in the neighborhood.

Patel further testified that, in 1992, Muslims working for the Congress Party attacked him and struck him in the head with a stone, leaving him hospitalized for one and a half months. He also stated that some Muslims forced his parents to leave the family home and have occupied it rent-free ever since. Finally, Patel testified that, in 1993, Muslims vandalized his moped while it was parked in front of his family's house.

Patel claims that he fears being harmed by Muslims and Congress Party members should he return to India.  This is primarily because of his past support of the BJP from 1990 to 1995 and his plans to continue supporting the BJP in India if deported.

Patel did not provide corroborating evidence for several key allegations.  For instance, he failed to provide any corroborating evidence regarding his head injury and resulting hospitalization. While he submitted a letter from his father that stated Patel had suffered some harassment, it did not mention the specific attack and ensuing hospital stay.  Patel offered conflicting explanations for the letter's omission, saying first that his father had forgotten what happened, and then that he was unaware of it.  Patel admitted, though, that his mother and three sisters knew of the occurrence, and he failed to persuasively explain why they had not written to support his account.

Nor did Patel offer any corroboration for his account of losing the family home to Muslim occupiers.  In fact, the letter from Patel's father stated that the family had sold the home.  Asked about this by the IJ, Patel explained that the home was separated into parts and the part that the Muslims allegedly stole was his separate part.  But he did not provide any corroborating evidence.

Finally, Patel did not provide corroborating evidence showing that he was a member of the BJP.  Though he said that his father had sent him his old membership card, Patel claims that he lost it before the hearing.

At the hearing's end, the IJ denied Patel's applications for asylum, withholding of removal, CAT protection, and cancellation of removal.  While noting that "several areas of concern" with Patel's testimony left it "far less than convincing," the IJ did not make an explicit finding that Patel was not credible.  Rather, the IJ found that the fatal flaws to Patel's applications were his lateness

in filing and failure to provide reasonably available corroborating evidence to meet the various burdens of proof for his claims. The BIA affirmed the IJ's decision and dismissed Patel's appeal. Patel then timely filed this petition for review.

**II.**

We review the factual findings of the final decision of the agency for substantial evidence. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We may reverse the decision on factual grounds only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review questions of law de novo. *Khalili*, 557 F.3d at 435.

Where, as here, the BIA affirms the IJ's decision by issuing its own opinion, the decision of the BIA is the final decision this court reviews. *Id*. But "[t]o the extent the BIA adopted the immigration judge's reasoning, . . . this Court also reviews the immigration judge's decision." *Id*.

Patel asserts that he is entitled to four types of relief. We address each in turn below.

**1. *Asylum***

Patel argues that the BIA's refusal to grant him a waiver of the one-year time limit for filing an asylum petition was unsupported by substantial evidence. Patel Br. at 14. The Attorney General ("AG") may grant asylum to an applicant who files a petition for asylum within one year of arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). But Patel filed his asylum application in 2009, thirteen years late. Though the AG may consider an untimely application in certain narrow circumstances under § 1158(a)(2)(D), courts cannot review that discretionary decision absent any statutory or constitutional error. *See* 8 U.S.C. § 1158(a)(3); *see also Vincent v. Holder*, 632 F.3d

351, 353 (6th Cir. 2011).  Because there has been no such error, we do not have jurisdiction to review this claim.

## 2. *Cancellation of Removal*

Patel's argument for cancellation of removal fails for a similar reason.  The AG, through the BIA, has discretion to cancel removal proceedings for aliens who meet certain requirements, including those who show that "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."  8 U.S.C. § 1229b(b)(1)(D).  And, as with the asylum issue, where a discretionary AG decision on removal cancellation is free from legal or constitutional error, this Court lacks jurisdiction to review the decision.  8 U.S.C. § 1252(a)(2)(B)(i); *see also Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008).

Patel argues that there *is* a legal error here, namely that the BIA used the wrong legal standard to analyze the "exceptional and extremely unusual hardship" prong of his cancellation-of-removal claim.  Patel Br. at 23.  He lists factors that he says the IJ must consider per the BIA's decision in *In re Monreal*, 23 I&N Dec. 56 (BIA 2001), and then argues that applying those factors in his case requires a ruling in his favor.  *Id.*  But the record shows that the IJ and the BIA both cited and followed *Monreal* as controlling authority, and the BIA explicitly held that the IJ "properly and throughly" considered the same "relevant factors" that Patel identifies.  Thus, the "essence of [Patel's] challenge" is not about the right legal standard, but rather the BIA's "application of an accepted standard to a particular set of facts."  *Reyes v. Holder*, 410 F. App'x. 935, 938 (6th Cir.

2011). Such matters are exactly what the law commits to the AG's discretion and places beyond this Court's jurisdiction. *Id.*; *accord Perez-Roblero v. Holder*, 431 F. App'x. 461, 466 (6th Cir. 2011).

### 3. *Withholding of Removal*

Patel mounts a two-pronged attack on the BIA's denial of his withholding-of-removal application. First, he says that we must remand for a credibility determination since the IJ failed to make an explicit one below. Patel Br. at 11. In his view, before an application can be denied for lack of corroboration, the IJ must find that the applicant is not credible and that there is a need for corroborating evidence. Patel Br. at 13–14. He relies on *El-Sheikh* v. *Ashcroft*, 388 F.3d 643 (8th Cir. 2004), for this proposition, incorrectly identifying it as Sixth Circuit authority. But *El-Sheikh* is not the law in this circuit. To the contrary, an adverse credibility determination is not required to deny a petition. Even when a petitioner *is* found credible, if "the agency determines that an applicant should provide corroborating evidence, . . . corroborating evidence is *required* ." *Urbina-Mejia v. Holder*, 597 F.3d 360, 367 (6th Cir. 2010) (emphasis added). The only exception is where a petitioner "cannot reasonably obtain that evidence." *Id.* It is to that exception where Patel turns to make his second argument.

Patel asserts that corroborating evidence about his alleged BJP membership, injury and hospitalization, and family home that was stolen by the Muslims was not reasonably available. But the IJ explicitly found otherwise and the BIA agreed. This Court is "bound to uphold a finding that corroborative evidence is available unless compelled otherwise" by substantial evidence. *Urbina-Mejia*, 597 F.3d at 367.

Patel labels the IJ's requests for corroborating evidence "impractical and implausible" and argues that he should not have been required to delay his escape from persecution to "collect paper reports to satisfy an IJ's unrealistic expectation[s]." Patel Br. at 13. But that is not what the IJ required. Patel needed to support his key claims with corroborating evidence only if it was reasonably "accessible to [him] . . . through . . . relatives." *Dorosh v. Ashcroft*, 398 F.3d 379, 383 (6th Cir. 2004) (internal quotation marks and citation omitted). This low bar should have been easy to hurdle given his close connection to his family in India. Indeed, that connection is so close that, since 2007, Patel has sent his infant daughters to live with his family for about a year apiece, with the second child returning over a year after removal proceedings against Patel started. And documentary evidence is easier to transfer than daughters.

As if to illustrate that point, his father returned Patel's old BJP membership card with the second daughter, and mailed the IJ a letter on Patel's behalf. The problem for Patel is that neither corroborates anything: the letter actually calls into question two of Patel's key claims (the head injury and the theft of the family home), and Patel lost the membership card before it could be submitted as evidence. Further, Patel does not explain why, for instance, his mother and sisters could not have sent letters affirming Patel's lengthy hospital stay and the violent attack that allegedly led to it. Patel clearly had access to corroborating evidence through his family and thus we are not compelled to reject the BIA's conclusion that such evidence was reasonably available.

### 4. *CAT Protection*

Finally, Patel argues that the BIA erred by affirming the IJ's denial of CAT protection. Patel Br. at 22. An alien applying for CAT protection must prove "that it is more likely than not that he

or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *see also Bonilla-Morales v. Holder*, 607 F.3d 1132, 1139 (6th Cir. 2010). Further, the torture must be "intentionally inflicted . . . at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1); *see also Bonilla-Morales*, 607 F.3d at 1139. The BIA agreed with the IJ's finding "that the respondent failed to demonstrate that it is more likely than not that he will be tortured by or 'at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'"

We are not compelled to conclude otherwise. Even accepting Patel's testimony as true, nowhere does he allege that the past threats came from any person acting in an official capacity. Patel only argues–unaided by citation to the record–that "[s]evere corruption exists in the government and the government is not in a position to assist" Patel. Patel Br. at 22. This hardly compels the conclusion that Indian officials will "more likely than not" torture Patel upon his return.

**III.**

For these reasons, we **DISMISS** the petition for review.