OPINION
PER CURIAM.
Xi Quang Tang, a native and citizen of China, entered the United States in November 2005. He appeared before an Immigration Judge (“IJ”) and conceded that he was removable for entering without being admitted or paroled. See Immigration and Nationality Act (“INA”) § 212(a)(6)(A)(i) [8 U.S.C. § 1182(a)(6)(A)(i) ]. Tang filed an applica *698 tion for asylum, withholding of removal, and relief under the Convention Against Torture. He alleged that he suffered past persecution, and feared persecution in the future, on account of his religion. Tang claimed that he had been a member of an “underground” Christian church whose parishioners were targeted for arrest. After a warrant for Tang’s arrest was published on the town bulletin board, he was fired from his job. He then left town for a friend’s house, where he remained in hiding for several months before leaving for the United States. In support of his claim, Tang submitted a Chinese baptismal document, a photograph of the choir performing in the underground church, and the warrant for his arrest. He also provided a “Certifícate of Baptism” from a Philadelphia church, photographs of the baptism ceremony, and statements from his sister and the friend with whom he stayed while in hiding.
The IJ denied relief, finding that Tang provided inconsistent testimony, lacked sufficient knowledge of Christianity and China’s church registration policies, and failed to provide reasonably expected corroboration. Tang appealed to the Board of Immigration Appeals (“BIA”), arguing that the IJ’s credibility determination was not supported by substantial evidence. The BIA adopted and affirmed the IJ’s decision, concluding that Tang “has failed to resolve the numerous credibility issues raised by the [IJ] and has not provided an explanation for his lack of corroborating evidence.” Tang filed a timely petition for review.
We have jurisdiction under INA § 242 [8 U.S.C. § 1252].[1] Because the BIA adopted the findings of the IJ and also commented on the sufficiency of the IJ’s determinations, this Court reviews the decisions of both the BIA and the IJ. See Kaita v. Att’y Gen., 522 F.3d 288, 296 (3d Cir.2008). Our review of these decisions is for substantial evidence, considering whether they are “supported by reasonable, substantial, and probative evidence on the record considered as a whole.” Lin-Zheng v. Att’y Gen., 557 F.3d 147, 155 (3d Cir.2009) (internal citation omitted). We will uphold an adverse credibility determination under the substantial evidence standard “ ‘unless any reasonable adjudicator would be compelled to conclude to the contrary.’” Lin v. Att’y Gen., 543 F.3d 114, 119 (3d Cir.2008) (internal citation omitted). Adverse credibility determinations based on speculation or conjecture, rather than on record evidence, are reversible. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir.2002). Furthermore, we must uphold a determination regarding the availability of corroborating evidence unless “a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.”[2] INA § 242(b)(4) *699 [8 U.S.C. § 1252(b)(4) ]; see also Sandie v. Att’y Gen., 562 F.3d 246, 252 (3d Cir.2009).
We conclude that the IJ’s adverse credibility determination is not supported by substantial evidence. The primary inconsistency cited by the IJ involved the photograph of the choir performing at the “underground” church, which Tang claimed was located in a single family residence.[3] See Administrative Record (“A.R.”), 97-98, 260. The IJ concluded that the photograph appeared to show “an auditorium sized facility.”[4] Tang’s attorney attempted to elicit details about the church building on direct examination, but the IJ would not allow it, asking, “[wjhat’s the relevance of what kind of building?” A.R. 80. Tang’s attorney explained that the building could indicate that it was an unregistered church. Id. But the IJ did not relent, stating, “I have no background as to, if, if a church is registered or not. So [Tang] can testify until, all day, and unless you give me some background on it, I can’t make these deductions.”[5] Id. Tang did discuss the size of the church building on cross examination, however, testifying that “[p]eople [in his town] built pretty big houses,” that his church was located in a two-story house, and that the house was “a little bigger than [the approximately 15 x 30 foot courtroom], much more in length.” Id. at 105-06. The IJ acknowledged that “[i]t’s a big court, I mean, relatively that would be a big house.” Id. at 106. Moreover, because the photograph did not provide a full view of the room, the IJ should not have expected “indicia of it being a personal family residence.”
*700 In addition, the IJ’s conclusions regarding Tang’s alleged lack of knowledge are not supported by substantial evidence. The IJ found that Tang did not know “the basis for China’s church registration policy,” “failed to demonstrate any basic knowledge about Christianity,” and was unaware of the denominational affiliation, if any, of his church in China. First, the IJ unreasonably required Tang to demonstrate an understanding of the reasons behind China’s policies toward religion.[6] Cf. Rizal v. Gonzales, 442 F.3d 84, 90 (2d Cir.2006) (“the critical showing that an applicant must make ... is that he has suffered past persecution, or fears future persecution, on the basis of religion,” not that he has detailed knowledge about a religion). And Tang did recognize that his church was targeted because “it is apparently [an] illegal organization.” A.R. 104. Further, the IJ’s conclusion that Tang “failed to demonstrate any basic knowledge about Christianity” is incorrect. When asked by the IJ to state “[j]ust the important things” he had learned about Christianity, Tang replied that “[w]e all have sins. Jesus uses blood to, to wash away ours sins. After we die Jesus will help us so we can, so we could go to Heaven.” A.R. 87. In addition, the IJ improperly faulted Tang because he did not know the denomination of the church he attended in China. Although the IJ concluded that “[t]here was no evidence presented that churches in China do not have denominations,” it does not follow that Tang’s church must have been classified by religious doctrine or that Tang would have knowledge of such a classification. See Ahmadshah v. Ashcroft, 396 F.3d 917, 920 n. 2 (8th Cir.2005).
Finally, even if the IJ reasonably required evidence corroborating Tang’s “Christian affiliation in the United States,” the IJ’s examination of whether such evidence had been provided was inadequate. In denying relief based on a lack of corroboration, the IJ must conduct the following three-part inquiry: (1) an identification of facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if he has not, (3) an analysis of whether the applicant has adequately explained his failure to do so. See Toure v. Att’y Gen., 443 F.3d 310, 323 (3d Cir.2006). Here, the IJ concluded that Tang could have submitted a letter from his pastor, a statement from the relative who first took him to the church, or the study material he used to prepare for his baptism. The IJ also rejected Tang’s explanation that he had left his baptism study materials at home and that his preacher did not have time to testify. Importantly, however, the IJ failed to address other evidence corroborating Tang’s membership in the Philadelphia church, such as his “Certificate of Baptism” and photographs of his baptism ceremony. See Cham v. Att’y Gen., 445 F.3d 683, 693 (3d Cir.2006) (recognizing that an IJ must “actually consider” the evidence presented by a party).
For the foregoing reasons, we will grant the petition for review, vacate the BIA’s order of May 6, 2008, and remand for further proceedings consistent with this opinion.

. The Government argues that Tang failed to exhaust his administrative remedies "with respect to each individual element" of the IJ's decision. We disagree. In his brief to the Board, Tang asserted that the IJ "incorrectly determined that [his] testimony was not credible." See Joseph v. Att’y Gen., 465 F.3d 123, 126 (3d Cir.2006) (stating that "so long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative remedies.”). In addition, the Board, citing to numerous pages from the transcript, referred to Tang's “contradictory testimony, prior statements, and material inconsistencies," as well as his failure to provide corroborating documentation. See Lin v. Att'y Gen., 543 F.3d 114, 122-23 (3d Cir.2008) (noting that exhaustion may occur when the BIA sua sponte considers an issue).

. Because Tang's asylum application was filed after the effective date of the REAL ID Act (May 11, 2005), the IJ was allowed to make a credibility determination “without regard to whether an inconsistency, inaccuracy, *699 or falsehood goes to the heart of the applicant’s claim----" INA § 208(b)(l)(B)(iii) [8 U.S.C. § 1158(b)(l)(B)(iii) ]. We conclude that the adverse credibility determinations in this case cannot survive even under this new provision, the lawfulness of which we have not considered.

.The only other inconsistency cited by the IJ pertained to Tang’s Chinese baptismal document, which indicated that he was baptized on November 15, 2000. Tang testified, however, that he was baptized in November 2001. Tang explained that the date on the document was a "mistake.” We conclude that this date discrepancy does not provide substantial evidence in support of the IJ's adverse credibility finding, particularly in light of Tang's otherwise consistent account and other pertinent documentary evidence. See INA § 208(b)(l)(B)(iii) [8 U.S.C. § 1158(b)(l)(B)(iii) ]. The IJ found that those "other documents contradicted [Tang's] ... claim that he was a member of an unregistered underground Christian church, which violated China's laws and therefore caused the government to seek his arrest.” In reaching this conclusion, however, the IJ failed to address a March 18, 2005, warrant to "arrest religion member” Tang, a letter from Tang’s sister describing village officials’ efforts to locate Tang, and a "certificate” from the friend with whom Tang stayed indicating that Tang had "escaped” because “he was want[ed] by [the] Police Bureau for religion belief.” See Chukwu v. Att’y Gen., 484 F.3d 185, 189 (3d Cir.2007) (holding that IJ "failed to take into account relevant and persuasive evidence that would not only explain the alleged inconsistencies, but would also support [the petitioner's] allegations of ... persecution.”).

. The IJ also focused on perceived inconsistencies concerning the number of people who belonged to Tang’s church. Tang initially testified that there were "[a] little over 10” members. A.R. 92. According to the IJ, Tang "later doubled the size of the membership from 10 to 20 when confronted with the photograph of the choir.” This is not an accurate characterization of Tang's testimony. Responding to a question from the IJ that was unrelated to the photograph, Tang in fact stated that there were ”[o]ver 10 but less than 20” members. Id. at 105.

. Notably, the IJ failed to acknowledge that the record contained the Department of State Country Reports, in which the registration of "house churches” in China is discussed.

. The IJ suggested that Tang's church was properly registered with Chinese authorities because he "did not dispute that there was a sanctioned affiliation between his church and the government.” This is a mischaracterization of Tang’s testimony. He first asserted that there was no affiliation, then stated that he was not sure whether an affiliation existed between his church and a nearby public school.