UNITED STATES of America,
Appellee,

v.

Zhao HUI, a/k/a "Hui Zhao,"
Defendant–Appellant,

Feng Li, a/k/a "Li Feng," Ru Jie Lu,
a/k/a "Lu Rue Jie," Defendants.

No. 02–1198.

United States Court of Appeals,
Second Circuit.

April 18, 2003.

Jeremy F. Orden, New York, NY, for Appellant.

Daniel A. Braun, Assistant United States Attorney (Deborah E. Landis, of counsel, James B. Comey, United States Attorney, on the brief), United States Attorney's Office, Southern District of New York, New York, NY, for Appellee.

PRESENT: KEARSE, CABRANES and STRAUB, Circuit Judges.

## SUMMARY ORDER

**THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 18th day of April, two thousand and three.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and hereby is AFFIRMED.

Defendant-appellant Zhao Hui ("Zhao") appeals from a judgment of conviction entered on March 22, 2002, after a jury trial in which she was convicted on three counts related to her illicit trafficking in, and conspiracy to traffic in, over $2.5 million in food stamps. Zhao was sentenced primarily to 41 months of imprisonment.

## I. Facts

Zhao was indicted on May 17, 1995, along with her boyfriend, Feng Li, and her mother, Ru Jie Lu, on five counts relating to their illegally trafficking in, and conspiring to traffic in, food stamps. Although Zhao's mother was tried and convicted on various counts in 1995, neither Zhao nor her boyfriend was tried at that time because they could not be located.

Zhao was ultimately arrested in February 2000, and she was tried in 2001 on a three-count indictment for conspiracy to commit food stamp fraud, in violation of 18 U.S.C. § 371; unauthorized acquisition of food stamps, in violation of 7 U.S.C. § 2024(b); and theft and disposal of food stamps in excess of $2.5 million, in violation of 18 U.S.C. § 641. At trial, the government presented evidence from which the jury was entitled to conclude that Zhao, along with her boyfriend, mother, and others, participated in a scheme to cash millions of dollars of illegally obtained food stamps through the use of sham "grocery stores." Zhao was convicted and sentenced primarily to 41 months of imprisonment.

On appeal, Zhao alleges (1) that the District Court abused its discretion by refusing to dismiss a juror who fell asleep for several moments during trial, and (2) that she was denied the effective assistance of counsel because her attorney would not permit her to testify.

## II. Discussion

### A. Failure to Dismiss Sleeping Juror

Defendant asserts that Juror #3 fell asleep several times during the course of trial, and that the trial judge erred by refusing to dismiss that juror before deliberations. This claim is without merit.

We review a trial judge's decision whether to dismiss a juror who has fallen asleep during certain periods of the trial—as we do other decisions related to the dismissal of jurors for cause under Fed. R.Crim.P. 24(c)—only for abuse-of-discretion. See United States v. Diaz, 176 F.3d 52, 78 (2d Cir.1999); see also United States v. Freitag, 230 F.3d 1019, 1023 (7th Cir.2000) ("[A] court is not invariably required to remove sleeping jurors, and a court has considerable discretion in deciding how to handle a sleeping juror.") (internal citations omitted).

In this case, the issue of Juror #3's sleeping during trial was first raised during the second day of trial, when defense counsel informed the District Court that he had observed Juror #3 sleeping during portions of the testimony. The Court indicated that it, too, had noticed Juror #3 "nodding," and stated that it would speak to that juror—a suggestion that defense counsel said made "perfect sense." At a sidebar, the Court told the juror to give his full attention to the trial, and warned that the juror would be excused if he could not stay awake.

The next day, the Government raised a concern that Juror # 3 may have discussed the trial with a lunch companion, who had been sitting in the gallery of the courtroom during the morning trial session. At that time, defense counsel stated that he had seen Juror # 3 fall asleep again "for short periods of time" during the morning testimony. Counsel had not, however, made such an assertion at the time of his claimed observation, and Judge Stein responded that he had been watching Juror # 3, and that, in his view, the juror seemed quite attentive; the Judge, however, invited defense counsel to make a motion with respect to Juror # 3 if he was so inclined. Defense counsel moved to dismiss the juror, and the Judge denied the motion.

Just before summation, in an abundance of caution, the Court indicated that it wanted to ask Juror # 3 about his conversation with his lunch companion. During a sidebar, the Court asked Juror # 3 if he had discussed the trial with his friend, to which Juror # 3 replied that he had not. After the interview, the Court asked the parties for their positions, and defense counsel stated, "I take no position, your honor," to which the Court responded, "[i]n light of that, we will keep him on the jury." Defense counsel did not object. Later that afternoon, defense counsel did not object when the Court indicated that it intended to discharge the alternate juror.

■ In light of all of the above, even assuming that defense counsel did not waive his argument with respect to Juror # 3 by failing to object to the Court's ultimate dismissal of the alternate juror, there is no question that the Court acted well within its discretion in refusing to dismiss Juror # 3. After learning that Juror # 3 had been "nodding off," the Court appropriately spoke to the juror in private about the need to pay attention, and then offered its view the next day that the juror had been sufficiently attentive in response. The Court did not agree with defense counsel's assertion that the juror had been sleeping during the second day of trial, and stated that it was "pleasantly surprised" with the attention that Juror # 3 had been paying. In refusing to dismiss Juror # 3, the District Court acted well within its broad discretion to decide when to remove a juror, *see United States v. Purdy,* 144 F.3d 241, 247 (2d Cir.1998), and we will not second-guess the Court's judgment.

## B. Ineffective Assistance of Counsel

Zhao also asserts that she was denied the effective assistance of counsel because her attorney would not allow her to testify, despite her having repeatedly expressed a desire to do so. *See Chang v. United States,* 250 F.3d 79, 83 (2d Cir.2001) (holding that "regardless of strategic considerations that [a] lawyer concludes weigh against such a decision, a defendant who wishes to testify must be permitted to do so" (citations and internal quotation marks omitted)).

Defendant's ineffective assistance claim comes to this Court on direct appeal. We have "expressed a baseline aversion to resolving ineffectiveness claims on direct appeal," *United States v. Pena,* 233 F.3d 170, 173 (2d Cir.2000) (citation and internal quotation marks omitted), because "resolution of such claims often requires consideration of matters outside the record on direct appeal," *Billy–Eko v. United States,* 8 F.3d 111, 114 (2d Cir.1993). Indeed, in this case, defendant has submitted two affidavits in support of her direct appeal, neither of which is a part of the record on appeal.

■ Because resolution of defendant's claim requires us to review evidence outside of the record on appeal, this case falls squarely within the category of cases that

are "properly reserved for collateral attack." *See Billy–Eko*, 8 F.3d at 115–16 ("There is a clear distinction between those claims that need to be brought on direct appeal, and those that are properly reserved for collateral attack. Attorneys who replace trial attorneys on appeal simply need to determine on direct appeal whether the ineffective assistance claim they envision is based solely on the record or needs extrinsic evidence in order to be substantiated."). Although it would be possible in this case to construe the affidavits that defendant has submitted as part of a motion to enlarge the record on appeal (so as to permit direct review of her claim), we think the better course is to dismiss defendant's ineffective assistance of counsel claim without prejudice, subject to renewal in a 28 U.S.C. § 2255 petition. In any such petition, defendant is strongly advised to present an affidavit from trial counsel in support of her claim. The imprecise, hearsay statements of appellate counsel in his affidavit submitted to this Court provide insufficient support for defendant's ineffective assistance of counsel claim.

\*        \*        \*        \*        \*        \*

We have considered all of the defendant's arguments that are before us and have found each of them to be without merit. Accordingly, the judgment of the District Court is hereby **AFFIRMED.**