# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2253

_____

| | | |
|---|---|---|
| Antony Gitau Omondi, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an Order of |
| | * | the Board of Immigration Appeals. |
| Eric H. Holder, Jr., Attorney | * | |
| General of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: January 11, 2012
Filed: March 15, 2012

_____

Before RILEY, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Antony Gitau Omondi, a native and citizen of Kenya, faces removal and has petitioned this court to review the decision of the Board of Immigration Appeals (BIA) that affirmed an immigration judge's (IJ) denial of Omondi's petition for asylum, withholding of removal, and relief under the Convention Against Torture. Specifically, Omondi seeks remand to the BIA for consideration of issues he raised before the BIA that were not explicitly addressed in the BIA's disposition of his immigration appeal. Because we are unable to determine whether the BIA considered

Omondi's claim that the IJ hearing transcript was deficient, we vacate the BIA's order and remand for further administrative proceedings.

## I.  Background

Omondi entered the United States as a visitor in June 2001.  He filed an asylum application in June 2002 claiming refugee status based on sexual orientation.  In 2005, Omondi's application was denied by the IJ based on an adverse credibility determination.  After Omondi appealed to the BIA, the BIA concluded the IJ's credibility findings were based on "minor inconsistencies, speculation, and conjecture," and that the IJ failed to apply the appropriate standard for requiring corroborating evidence.  Pointing to the standard regarding credibility and corroboration set forth by this court in El-Sheikh v. Ashcroft, 388 F.3d 643, 647 (8th Cir. 2004), the BIA remanded the case to allow the IJ to determine whether Omondi had otherwise established eligibility for relief.

In 2009, the IJ held a hearing and took all new testimony from Omondi. Omondi testified through an interpreter that he was afraid to return to Kenya because he is gay.  In a written affidavit and in his hearing testimony, Omondi described events where he and his then-boyfriend Geofrey Kamau were arrested by police in Kamakunji, beaten, and forced to perform sex acts with each other in front of the guards.  In support of his application, Omondi submitted a letter from Kamau that stated that the two men had been detained.  However, Kamau's letter omitted many details that were present in Omondi's account—including any mention of being beaten and forced to perform sex acts.  Omondi also submitted letters from his brother and another individual who confirmed that Omondi was arrested by Kenyan officials.

The IJ denied Omondi's application for relief and again ordered Omondi removed.  The IJ found Omondi's testimony credible and noted Omondi had "given an otherwise consistent account describing in graphic detail his experience of

detention, starvation, and physical abuse at the Kamakunji police station." (IJ Decision, Sept. 10, 2009, at 7.) However, the IJ held that Omondi had not corroborated his claim of past persecution. Specifically, the IJ found that although Omondi had sufficiently corroborated his membership in the particular social group of "homosexual men in Kenya," Omondi did not "sufficiently corroborate the most essential feature of his claim—his account of detention at the Kamukunji police station where he and Kamau were allegedly beaten, whipped, starved, and forced to perform sexual intercourse publicly." (Id. at 8.) The IJ held that Omondi failed to meet his burden of proving past persecution in Kenya on account of his membership in a particular social group, a well-founded fear of future persecution, or the likelihood of torture.

Omondi again appealed to the BIA. In his appeal to the Board, as well as in a separate motion, Omondi asked that a corrected transcript of the IJ hearing be prepared because the current transcript included 236 instances in which the word "indiscernible" appeared. The BIA did not rule on his motion for a corrected transcript. Instead, on May 19, 2011, the BIA issued a written opinion dismissing Omondi's appeal and denying a motion to remand based on new evidence. The BIA concluded that there was "no reason to disturb the [IJ's] decision." (BIA Decision, May 19, 2011, at 2.) The Board held the IJ had sufficiently explained why corroboration was required and Omondi "could not sufficiently explain the glaring omission." (Id.) The BIA further held that Omondi had not proven that he was likely to be persecuted or subjected to torture in Kenya. (Id. at 2-3.)

## II. Analysis

In denying Omondi's claims for relief, the BIA agreed with the IJ's assessment that Omondi failed to adequately corroborate his claim of being beaten and forced to perform sex acts in prison. Omondi challenges the BIA's conclusion that he failed to present sufficient corroborative evidence. First, he claims that under the

appropriate standard at the time of his application, no corroboration was required. Second, he argues that corroborative evidence was unavailable.

"Where the BIA has adopted the IJ's opinion and added reasoning and analysis of its own, we review both decisions." Khrystotodorov v. Mukasey, 551 F.3d 775, 781 (8th Cir. 2008). "In removal actions, we apply a de novo standard of review to issues of law 'but accord substantial deference to the BIA's interpretation of immigration statutes and regulations.'" Garcia-Torres v. Holder, 660 F.3d 333, 335 (8th Cir. 2011) (citation omitted). "With respect to the agency's findings of fact, we review for substantial evidence under the governing statutory standard: [T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. (citation and internal quotation marks omitted).

Pursuant to the following analysis, we conclude that the IJ and the BIA did not err in requiring Omondi to corroborate his claims. However, the BIA's opinion does not explicitly address Omondi's argument that the hearing transcript from the IJ was deficient. Because it failed to rule on the transcript issue, it is unclear on appeal whether the Board considered Omondi's claim that he testified before the IJ that corroborative evidence was unavailable because Kamau had "disappeared." We therefore remand to allow the BIA to take up the deficient transcript issue and to determine whether it affects the Board's assessment of whether corroborative evidence was available to Omondi.

A.

Omondi first argues that the IJ and BIA erred by requiring him to submit corroborative evidence even though they found his testimony credible. We do not find his argument on this point to be convincing.

Omondi is correct that his application was filed prior to May 11, 2005, and so the burden of proof standard under the REAL ID Act of 2005, 8 U.S.C. § 1158(b)(1)(B), does not apply.[1] See Litvinov v. Holder, 605 F.3d 548, 550 n.2 (8th Cir. 2010). However, even prior to the enactment of the REAL ID Act, the BIA held that corroborative evidence may be required in instances where an applicant's testimony is credible but where it is reasonable to expect corroboration. Specifically, in Matter of S-M-J, 21 I. & N. Dec. 722 (BIA 1997) (en banc), the BIA opined:

> Where the record contains general country condition information, and an applicant's claim relies primarily on personal experiences not reasonably subject to verification, corroborating documentary evidence of the asylum applicant's particular experience is not required. Unreasonable demands are not placed on an asylum applicant to present evidence to corroborate particular experiences (e.g., corroboration from the persecutor). However, where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided. That is, an asylum applicant should provide documentary support for material facts which are central to his or her claim and easily subject to verification, such as evidence of his or her place of birth, media accounts of large demonstrations, evidence of a publicly held office, or documentation of medical treatment. . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof.

21 I. & N. Dec. at 725-26.

---

[1] The REAL ID Act states, in relevant part, that "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 18 U.S.C. § 1158(b)(1)(B)(ii).

In El-Sheikh v. Ashcroft, 388 F.3d 643, 647 (8th Cir. 2004), we recognized that our sister courts had taken alternative approaches to Matter of S-M-J. While the Second and Third Circuits accepted the BIA's position regarding corroborative evidence, the Ninth Circuit rejected the principle that an asylum applicant may be required to corroborate credible testimony.[2] Faced with this conflicting precedent, our court followed the Second and Third Circuits in "accept[ing] the BIA's position regarding corroborative evidence as articulated in [Matter of S-M-J]." El-Sheikh, 388 F.3d at 647. We also agreed with the rule expressed by the Second Circuit that a denial of an asylum application based on a lack of corroboration could not be sustained if "'the BIA failed to (1) rule explicitly on the credibility of [the applicant's] testimony; (2) explain why it was reasonable . . . to expect additional corroboration; or (3) assess the sufficiency of [the applicant's] explanations for the absence of corroborating evidence.'" El-Sheikh, 388 F.3d at 647 (quoting Diallo v. I.N.S., 232 F.3d 279, 287 (2d Cir. 2000)). See also Madjakpor v. Gonzales, 406 F.3d 1040, 1045 (8th Cir. 2005) (upholding IJ's finding that, although petitioner's testimony was credible, petitioner's failure to make any attempt to contact relatives, business associates, or members of an affiliated resistance group to obtain statements or other documentary evidence corroborating his testimony was unreasonable).

Omondi argues that our pre-REAL ID precedent on corroboration inappropriately relies on Matter of S-M-J and ignores a later BIA decision, Matter of

---

[2] Compare Diallo v. I.N.S., 232 F.3d 279, 285-86 (2d Cir. 2000); Abdulai v. Ashcroft, 239 F.3d 542, 551-54 (3d Cir. 2001); with Ladha v. I.N.S., 215 F.3d 889, 899 (9th Cir. 2000), overruled on other grounds by Abebe v. Mukasey, 554 F.3d 1203, 1208 (9th Cir. 2009) (en banc) (per curiam), cert. denied, 130 S. Ct. 3272 (2010). We note that the Ninth Circuit's position in Ladha has since been superseded by the REAL ID Act of 2005, which explicitly allows a trier of fact to require corroboration, even for "otherwise credible testimony." See Aden v. Holder, 589 F.3d 1040, 1044 & n.7 (9th Cir. 2009) (citing 8 U.S.C. § 1158(b)(1)(B)(ii)).

<u>Y-B</u>, 21 I. & N. Dec. 1136 (BIA 1998) (en banc). Seizing on language in <u>Matter of Y-B</u>, Omondi argues that corroborative testimony is not required where testimony is sufficiently "[s]pecific, detailed, and credible." <u>See</u> <u>Matter of Y-B</u>, 21 I. & N. Dec. at 1139 ("Specific, detailed, and credible testimony <u>or</u> a combination of detailed testimony and corroborative background evidence is necessary to prove a case for asylum." (emphasis added)). Omondi argues that his testimony was so detailed and credible that requiring corroborative evidence was unreasonable.

Omondi misreads <u>Matter of Y-B</u>, because in that decision the BIA noted that "the weaker an alien's testimony, the greater the need for corroborative evidence." 21 I. & N. at 1139. Reading <u>Matter of S-M-J</u> and <u>Matter of Y-B</u> together, it is apparent that the reasonableness of requiring corroborative evidence is a case-specific inquiry. If an applicant's testimony is sufficiently specific, detailed, and credible, then it may not be reasonable to require further corroborative evidence. However, if the applicant's testimony lacks specificity or credibility, or if corroborative evidence is available to the applicant, it may be reasonable for the IJ or BIA to require the submission of additional evidence. Each case is different, however, and will allow an independent assessment based on the circumstances presented. <u>See</u> <u>Diallo</u>, 232 F.3d at 286 ("[T]he appropriate formulation is that credible testimony <u>may</u> be enough, depending on the circumstances."); <u>Eta-Ndu v. Gonzales</u>, 411 F.3d 977, 984 (8th Cir. 2005) ("[T]he IJ and the BIA may require corroborative evidence where it is reasonable to expect corroboration." (internal marks omitted)).

In the instant case, the IJ determined that Omondi's testimony was credible, noting specifically that Omondi gave a "consistent account describing in graphic detail his experience of detention, starvation, and physical abuse at the Kamakunji police station." (IJ Decision, Sept. 10, 2009, at 7.) Yet the IJ held that Omondi did not sufficiently corroborate his individualized claim of past persecution:

Although Kamau's affidavit details the homosexual relationship for which he and the respondent were detained by Kenyan officers for three days, the affidavit lacks any reference to Kamau and the respondent having been physically or emotionally abused or forced to perform sexual intercourse while in detention. Instead, the affidavit proceeds to discuss the couple's release from prison due to a lack of evidence and the respondent's desire to travel to the U.S. Kamau's affidavit is deficient with respect to the respondent's central claim, and the respondent has produced no other evidence discussing his alleged persecution at the Kamukunji police station. For these reasons, the Court finds that the respondent did not sufficiently corroborate his claim of past persecution.

(Id. at 8.) The IJ then described why it was reasonable to require such corroborative testimony:

The events at the Kamukunji police station not only constitute the sole basis for the respondent's claim of past persecution, but were easily subject to verification through the affidavit of Kamau. Kamau was the only witness to the alleged persecution besides the Kenyan police, and he shared with the respondent the painful and humiliating experience of starvation, physical abuse, and forced public intercourse for three days. Kamau sent the respondent an affidavit of support with the knowledge that it was meant to further his former partner's claim. . . . Although the credible testimony of an applicant may suffice without corroboration, in light of the material and central nature of the events at the Kamukunji police station, it was reasonable to expect corroboration of those events.

(Id. at 9.) In approving this analysis by the IJ, the BIA agreed that "[u]nder the circumstances, it [was] . . . reasonable to expect such corroboration particularly since it is the crux of the respondent's claim of past persecution." (BIA Decision, May 19, 2011, at 2.)

The IJ did not err in first making a credibility determination and then explaining why corroborative evidence was reasonably required. See El-Sheikh, 388 F.3d at 647. Because Omondi offered the affidavit of Kamau to corroborate his account of what occurred at the police station, it was reasonable for the IJ to expect Kamau's account to at least mention mistreatment by the guards. Kamau's failure to make any reference to such mistreatment calls into question the crux of Omondi's claims. As a result, we do not believe it was unreasonable for the IJ and the BIA to expect further corroborative evidence from Kamau.

B.

Omondi next argues that even if corroboration was appropriately required, there is an issue of whether corroborative evidence was available. He argues that the BIA failed to address transcription and translation errors in the transcript of the hearing before the IJ, and in failing to do so, overlooked his explanation for why corroborative evidence was not reasonably available. Omondi claims that the BIA's failure to address the transcription errors has stifled his ability to appeal and denied him due process.

In its order denying Omondi's application, the IJ faulted Omondi for not getting a supplemental affidavit from Kamau to corroborate his claims of police abuse and forced sex:

> The Court is not persuaded by the respondent's explanation for the absence of additional corroborating evidence. In response to concerns regarding the insufficiency of Kamau's affidavit, the respondent stated that he could not have known to ask Kamau to write a more detailed affidavit because he never reviewed the original affidavit submitted in 2002. In addition, the respondent stated that he merely assumed that Kamau's affidavit sufficiently supported his claim. The Court notes that

the parties bear responsibility for reviewing evidence submitted for the record. Further, the Court finds that the respondent has been given ample notice and opportunity to ask Kamau to supplement the affidavit pursuant to the concerns expressed by [the first IJ] Judge Brahos in his oral decision and by the DHS at the respondent's hearing in 2005.

(IJ Opinion, Sept. 10, 2009, at 9-10.)

In addressing Omondi's challenge, we begin by recognizing that "[w]e may not reverse the IJ's determination with respect to the availability of corroborating evidence unless a reasonable trier of fact would be compelled to conclude that the evidence is unavailable." Khrystotodorov, 551 F.3d at 782; see also 8 U.S.C. § 1252(b)(4).[3]

However, a separate governing principle of our review "requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." SEC v. Chenery Corp., 318 U.S. 80, 94 (1943). Under the Chenery doctrine, "the BIA must consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." Averianova v. Holder, 592 F.3d 931, 936 (8th Cir. 2010) (citation omitted). "[I]t is not necessary for the BIA to list every possible positive and negative factor in its decision," or "to write an exegesis on every contention." Id. (citations omitted). But the IJ or BIA "must give reasons that are 'specific' enough that a reviewing court can appreciate the reasoning behind the

---

[3] Although the REAL ID Act does not govern Omondi's burden of proof, "it does govern our standard of review with respect to the IJ's determination regarding corroborative evidence." Rui Yang v. Holder, 664 F.3d 580, 587 n.7 (5th Cir. 2011) (noting the "amended standard of review set forth in 8 U.S.C. § 1252(b)(4) takes effect on the date the REAL ID Act was enacted" (citing REAL ID Act of 2005 § 101(e), Pub. L. 109-13, 119 Stat. 231)).

decision and perform the requisite judicial review." Singh v. Gonzales, 495 F.3d 553, 557 (8th Cir. 2007).

Although the BIA's order adopted the IJ's findings as to the availability of evidence, noting that Omondi "could not sufficiently explain the glaring omission," it never addressed Omondi's argument that the transcript below was deficient. As a result, it is not apparent to us in our review that the BIA ever considered the explanation Omondi alleges he made during the IJ hearing as to why he was unable to contact Kamau. The Due Process Clause of the Fifth Amendment entitles Omondi to a fair hearing, Kipkemboi v. Holder, 587 F.3d 885, 890 (8th Cir. 2009), which includes "the opportunity to be heard at a meaningful time and in a meaningful manner." Mohamed v. Gonzales, 477 F.3d 522, 526 (8th Cir. 2007) (citation omitted). Although we express no opinion on the issue of whether an inaccurate or incomplete transcription may have prejudiced Omondi's "ability to perfect an appeal," see Kheireddine v. Gonzales, 427 F.3d 80, 85 (1st Cir. 2005) (citation omitted), we find that remand is appropriate to allow the BIA to address the issue in the first instance. See I.N.S. v. Orlando Ventura, 537 U.S. 12, 16-17 (2002) (per curiam) (noting that "a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands").

C.

Omondi raises a number of other challenges in his petition for review, including that the IJ and BIA erred in their assessment of his eligibility for relief. Whether Omondi has met his burden of showing eligibility for relief hinges largely on whether he can show that the corroborative evidence reasonably required by the IJ was unavailable. As such, it would be premature for this court to take up Omondi's

challenge to the BIA's eligibility for relief determination.[4] For purposes of remand, however, we do address two of Omondi's related claims under the Chenery doctrine.

Omondi claims that the BIA failed to take up his claim that the IJ was biased against him. Omondi argues the IJ's reference to Omondi's coerced sex in prison as being forced to "make love" demonstrated that the IJ failed to approach the application neutrally. Omondi also points to two times where the IJ made statements after objections in line with "Alright, I'll . . . let him answer it. It won't have any effect on this Court, but I'll let him answer the question" as showing that the IJ had predetermined the outcome of the case. The Board's failure to address these issues in its order did not violate the Chenery doctrine. Overall, "[t]he BIA satisfied the requirement that it announce its decision in terms sufficient to enable this court to determine that it has considered the facts—heard and thought, not merely reacted." Rodriguez-Rivera v. I.N.S., 993 F.2d 169, 171 (8th Cir. 1993) (per curiam). Although the IJ could have chosen his words more carefully, it does not follow that the use of the phrase "make love" as a euphemism for sexual intercourse demonstrates bias. Omondi's own affidavit first introduced the phrase when he recounted that his police captors "told us to show them how we make love." The IJ's other statements also do not amount to a showing that the IJ failed to properly consider the evidence. See United States v. White, 557 F.3d 855, 858 (8th Cir. 2009).

---

[4] Likewise, because the BIA may alter its analysis on remand when it considers the corroboration issue and whether it affects Omondi's claims of persecution, we decline to reach Omondi's challenge that the merits analysis by the BIA fell afoul of the Chenery doctrine.

-12-

## III. Conclusion

Pursuant to the foregoing analysis, the IJ and BIA did not err in their assessment that it was reasonable to expect further corroborative evidence from Omondi to support his asylum application. Because Kamau was involved in the same arrest and detention as Omondi, it was reasonable to expect Kamau's letter to corroborate the crux of Omondi's account. We find that remand is warranted in this case, however, because it is not apparent from the BIA's order whether the BIA addressed Omondi's claim that deficiencies in the IJ hearing transcript masked his IJ hearing testimony that corroborative testimony was unavailable. We vacate the BIA's order and remand the case for further proceedings consistent with this opinion.

_____