# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 14-1320

———————————————————

Jeylani Mowlana,

*Petitioner*,

v.

Loretta E. Lynch, Attorney General of the United States[1],

*Respondent*.

——————————

Petition for Review of an Order of the
Board of Immigration Appeals

——————————

Submitted: January 14, 2015
Filed: September 30, 2015

——————————

Before RILEY, Chief Judge, BEAM and COLLOTON, Circuit Judges.

——————————

COLLOTON, Circuit Judge.

Jeylani Shariff Mowlana, a native of Somalia, was ordered removed from the United States after the Board of Immigration Appeals concluded that he had been convicted of an aggravated felony. The Board cited Mowlana's prior conviction under

———————————

[1]Loretta E. Lynch is automatically substituted for Eric H. Holder pursuant to Federal Rule of Appellate Procedure 43(c)(2).

7 U.S.C. § 2024(b), which forbids the knowing use, transfer, acquisition, alteration, or possession of benefits in a manner contrary to the statutes and regulations of the Supplemental Nutrition Assistance Program, administered by the United States Department of Agriculture. On Mowlana's petition for review, we conclude that his offense was an aggravated felony, and we therefore deny the petition.

I.

Mowlana was admitted to the United States as a refugee in 2000 and became a lawful permanent resident in 2002. In January 2011, Mowlana pleaded guilty to the unauthorized use, transfer, acquisition, and possession of "food stamp benefits . . . of a value of $5,000 or more," in violation of 7 U.S.C. § 2024(b). Mowlana was ordered to make restitution of $206,634.68 to the Department of Agriculture's Food and Nutrition Service.

In September 2011, the Department of Homeland Security commenced removal proceedings against Mowlana, alleging he was subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), because he had been convicted of an aggravated felony. An alien who is convicted of an "aggravated felony" is subject to removal. 8 U.S.C. § 1227(a)(2)(A)(iii). An aggravated felony includes any offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i).

In this case, an immigration judge ruled that Mowlana's conviction was for a crime "involving fraud or deceit" because, *inter alia*, a violation of 7 U.S.C. § 2024(b) involves "a deliberate deception of the government and an impairment of its lawful functions." The Board agreed, reasoning that because a violation of § 2024(b)(1) required the defendant to know his conduct was unlawful, "[i]n all violations, the defendant commits a fraud upon the United States by falsely representing proper use of the food stamps, with full knowledge that the items are food stamps and that the

federal government would not permit such use."  We review the Board's legal determinations *de novo*, according deference to the Board's interpretation of ambiguous provisions in the statutes it administers.  *Tian v. Holder*, 576 F.3d 890, 895 (8th Cir. 2009).  Because the Board adopted and affirmed the IJ's decision, we review both decisions on appeal.

To determine whether Mowlana's conviction under § 2024(b) "involve[d] fraud or deceit," we apply the so-called categorical approach.  *See Kawashima v. Holder*, 132 S. Ct. 1166, 1172 (2012).  Under that analysis, we look "'not to the facts of the particular prior case,'" but to whether the elements of the statute of conviction "categorically fit[] within the 'generic' federal definition of a corresponding aggravated felony."  *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007)).  We consider whether a conviction under the statute "necessarily involve[s]" facts that equate to the defined aggravated felony.  *Id.* (internal quotation omitted).  In this case, therefore, the question is whether a violation of § 2024(b) necessarily involves facts that "involve[] fraud or deceit."

To show that § 2024(b) creates an offense outside the scope of the listed aggravated felony, Mowlana must demonstrate a "realistic probability" that the government would apply the statute to conduct that does not involve fraud or deceit. *Duenas-Alvarez*, 549 U.S. at 193; *Armenta-Lagunas v. Holder*, 724 F.3d 1019, 1021, 1024 (8th Cir. 2013).  Our analysis of realistic probability must go beyond the text of the statute of conviction to inquire whether the government actually prosecutes offenses under § 2024(b) in cases involving hypothetical conduct that would not qualify as an aggravated felony.  *Moncrieffe*, 133 S. Ct. at 1686-87, 1693.  The concurring opinion seems to conclude that the "realistic probability" inquiry applies only when analyzing a state-law offense.  *Post*, at [3].  This court, however, already has endorsed applying *Duenas-Alvarez* to determine whether a *federal* offense is categorically a crime involving moral turpitude.  *Bobadilla v. Holder*, 679 F.3d 1052,

1055-57 (8th Cir. 2012); *see Rios-Diaz v. Holder*, 543 F. App'x 617, 618 (8th Cir. 2013). In line with decisions from at least three other circuits, we see no reason why fanciful hypotheticals or theoretical possibilities should preclude a categorical conclusion that a federal offense is an aggravated felony. *See Sampathkumar v. Holder*, 573 F. App'x 55, 57 (2d Cir. 2014); *Familia Rosario v. Holder*, 655 F.3d 739, 749 (7th Cir. 2011); *Accardo v. U.S. Att'y Gen.*, 634 F.3d 1333, 1337 (11th Cir. 2011).

The terms "fraud" and "deceit" are not defined in the Immigration and Nationality Act, so we look to ordinary meanings when the statute was enacted. "Deceit" means "the act or practice of deceiving (as by falsification, concealment, or cheating)." *Webster's Third New International Dictionary* 584 (1993); *see Kawashima*, 132 S. Ct. at 1172. "Fraud" is defined as "an instance or an act of trickery or deceit esp. when involving misrepresentation : an act of deluding." *Webster's Third New International Dictionary* 904 (1993). The accompanying term "involves" is broadening, and an offense "*involves* fraud or deceit" under subsection (M)(i) as long as it contains elements that "necessarily entail fraudulent or deceitful conduct." *Kawashima*, 132 S. Ct. at 1172. An offense may involve fraud or deceit even if the terms "fraud" and "deceit" are absent from the text of the statute and are not formal elements of the crime. *Id.*

Benefits provided under the Supplemental Nutrition Assistance Program, which we will refer to as "SNAP benefits," are issued to eligible households. They must be used only to purchase food from approved retail stores at prices prevailing in those stores. 7 U.S.C. § 2016(b). To redeem benefits, a beneficiary uses an Electronic Benefits Transfer card, which functions similar to a debit card. *See* 7 C.F.R. § 274.1(b) (permitting state agencies to issue benefits through the "Electronic Benefit Transfer System" where benefit information is stored electronically, either in a central database or on each benefit card); U.S. Dep't of Agric., *Supplemental Nutrition Assistance Program: Electronic Benefits Transfer Fact Sheet for New Retailers* (2014), *available at* http://www.fns.usda.gov/sites/default/files/snap/EBT-

Fact-Sheet.pdf. The beneficiary swipes the EBT card at an electronic Point of Sale device, and enters his or her personal identification number. The Point of Sale device then credits the retailer's account for the purchase amount. Information about the transaction is transmitted to a state electronic benefits transfer contractor, which directs funds from a federal account to reimburse the retailer on a daily basis. *See* U.S. Gov't Accountability Office, GAO-08-415, *Food Stamp Program: Options for Delivering Financial Incentives to Participants for Purchasing Targeted Foods* 7-8 & fig.1 (2008), *available at* http://www.gpo.gov/fdsys/pkg/GAOREPORTS-GAO-08-415/pdf/GAOREPORTS-GAO-08-415.pdf.

Mowlana's statute of conviction, 7 U.S.C. § 2024(b)(1) requires proof that a defendant (1) used, transferred, acquired, altered, or possessed benefits contrary to SNAP statutes or regulations, and (2) knew that his conduct was contrary to the statutes or regulations. *See Liparota v. United States*, 471 U.S. 419, 433 (1985). The Attorney General suggests that prosecutions under § 2024(b)(1) fall into four categories, and that all of them necessarily involve fraud or deceit.

The first category involves benefit recipients or store owners who provide inaccurate information to the government regarding their eligibility for the program. *See, e.g., United States v. Gettler*, 46 F. App'x 858, 859 (8th Cir. 2002) (per curiam); *United States v. Hui*, 64 F. App'x 264, 265 (2d Cir. 2003); *United States v. Hebeka*, 25 F.3d 287, 290 (6th Cir. 1994). This conduct involves deceit because a perpetrator knowingly provides false information to the government. *See Kawashima*, 132 S. Ct. at 1172.

The second category of prosecutions involves store owners or employees who accept benefits in exchange for ineligible, non-food items, or benefit recipients who use benefits to pay for non-food items. *See, e.g., United States v. Mohamed*, 727 F.3d 832, 833 (8th Cir. 2013); *United States v. Uddin*, 551 F.3d 176, 178 (2d Cir. 2009); *United States v. Kemble*, No. 11-10014-05-JTM (D. Kan. Aug. 17, 2011). The

Attorney General argues persuasively that such violations "involve deceit" because whenever a benefit recipient knowingly uses an EBT card to redeem benefits for ineligible items, or a store owner knowingly allows a redemption for ineligible goods, the offender makes a false representation. The offender "has falsely represented to the government, through the presentation and debiting of the EBT card, that the transaction is valid and lawful even though each knows that such representation is false." Resp. Br. 22. Because such a transaction is contrary to SNAP statutes, *see, e.g.*, 7 U.S.C. § 2016(b), the electronic representation is false and involves deceit.

Mowlana's own offense is in this category. He asserts that he was convicted for allowing customers to buy food on store credit and to pay for the credit with SNAP benefits at a later time. The governing regulations prohibit the acceptance of benefits "in payment for items sold to a household on credit." 7 C.F.R. § 278.2(f). Mowlana's conduct therefore involved deceit because it misrepresented to the government that each transaction was in accordance with the rules governing the program. A misrepresentation occurred each time Mowlana permitted a customer to redeem benefits for store credit, rather than for food, using an electronic Point of Sale device at the check-out counter.

The third category of violations involves bartering of benefits by trading SNAP benefits for goods or money, or vice versa. *See, e.g.*, *United States v. Parson*, 288 F.3d 818, 819 (6th Cir. 2002); *United States v. Gibbens*, 25 F.3d 28, 30 (1st Cir. 1994). The fourth category involves stealing benefits from eligible households. *See United States v. Williams*, 97 F.3d 1463 (9th Cir. 1996) (unpublished table decision). In these situations, an offender makes no false representation to the government at the time of the violation, but a false representation is likely to occur later if an ineligible person—having obtained SNAP benefits through barter or theft—redeems the benefits at a retailer's Point of Sale device.

The Board, citing *Matter of Flores*, 17 I. & N. Dec. 225 (BIA 1980), concluded that violations of § 2024(b) "inherently" involve fraud.  Applying the statute that imposes immigration consequences for commission of a "crime involving moral turpitude," 8 U.S.C. §§ 1101(f), 1182(a)(2)(A)(i), the Board has reasoned that where "fraud is so inextricably woven into the statute as to clearly be an ingredient of the crime," then a violation of the statute necessarily involves moral turpitude.  *Matter of Flores*, 17 I. & N. Dec. at 228.  By the same logic, suggests the Board in this case, such a violation necessarily involves fraud or deceit, even if there is no false representation when the offense is committed.

The government's position draws support from appellate decisions concerning crimes involving moral turpitude.  Even where both parties to an unlawful transfer of false identification documents know that the documents are false, the offense "involves inherently deceptive conduct," because the seller of the fraudulent documents "plac[es] them out into the world."  *Lagunas-Salgado v. Holder*, 584 F.3d 707, 712 (7th Cir. 2009).  Similarly, the possession with intent to transfer unlawfully issued identification documents involves deceit even where the documents are not falsified, because the intended transfer would deceive the government and impair the effectiveness of its identification scheme.  *Yeremin v. Holder*, 738 F.3d 708, 715-16 & n.2 (6th Cir. 2013).  And the sale of a counterfeit trademark is "an inherently fraudulent crime," even when the purchaser knows that the item is counterfeit, because "the owner of the mark has been robbed of its value."  *Tall v. Mukasey*, 517 F.3d 1115, 1119-20 (9th Cir. 2008).

For similar reasons, the Board here permissibly concluded that bartering or stealing SNAP benefits involves fraud or deceit.  By conducting a forbidden transaction with SNAP benefits, an offender prevents the legitimate use of those benefits by an eligible household for the purchase of food items.  *See* 7 U.S.C. § 2016(b).  The offense places SNAP benefits into the stream of commerce, and the only way in which an ineligible person can redeem the benefits is to make a false

representation to the government at the point of sale. Unlawful bartering or stealing of SNAP benefits interferes with the effectiveness of the nutrition assistance program by placing benefits into the hands of ineligible persons, and thus necessarily entails fraudulent or deceitful conduct.[2]

Mowlana contends that offenses in these four categories do not necessarily involve fraud or deceit, despite the offender's guilty knowledge, because § 2024(b) does not require a specific intent to defraud. This construction of the aggravated felony provision is foreclosed by *Kawashima*. The alien there was removable as an aggravated felon whose offense involved fraud or deceit, even though his offense of filing a false tax return did not require a specific intent to defraud. *See Kawashima*, 132 S. Ct. at 1172. The elements of the tax offense in *Kawashima* were that the defendant made or subscribed to a tax return under the penalties of perjury, that the

---

[2]The three decisions cited by the concurring opinion as a reason to reject the Board's categorical conclusion, *post*, at [3], are unpersuasive authority. That a violation of § 2024(b) might not "involv[e] dishonesty or false statement" for purposes of Federal Rule of Evidence 609(a)(2), *see United States v. Mejia-Alarcon*, 995 F.2d 982, 990 (10th Cir. 1993), is not controlling here. The rule of evidence restricts the admissibility of prior convictions for impeachment purposes at a trial. The terms "dishonesty" and "false statement" in Rule 609 have been defined narrowly in light of the rule's purpose to admit only convictions tending to show that an accused would be likely to testify untruthfully. *Id*. at 988-89; *see* Fed. R. Evid. 609(a)(2) (2005). The aggravated felony provision in the Immigration and Nationality Act includes different text and serves a different purpose. Whether an offense "involves fraud or deceit" is not guided by the same considerations that govern the evidentiary question. The concurrence also cites two unpublished and nonprecedential decisions from the Ninth Circuit. One addresses a different issue—whether a violation of § 2024(b) is a crime involving moral turpitude—and, contrary to the aggravated-felony analysis, *see Kawashima*, 132 S. Ct. at 1172, focuses on whether § 2024(b) contains an explicit or implicit element of intent to defraud. *Huynh v. Holder*, 321 F. App'x 649, 651 (9th Cir. 2009). The other includes only a conclusory assertion with no analysis. *See Nguyen v. Holder*, 494 F. App'x 727, 728 (9th Cir. 2012).

return was false as to a material matter, that the defendant did not believe that the return was true and correct as to every material matter, and that the defendant acted "willfully with the specific intent to violate the law." *Id*. (citing cases). Specific intent to defraud was not an element. *See United States v. Pomponio*, 429 U.S. 10, 11 & n.2, 12 (1976) (per curiam); *Considine v. United States*, 683 F.2d 1285, 1287 (9th Cir. 1982).[3]

For the reasons stated, we uphold the Board's conclusion that Mowlana's conviction under 7 U.S.C. § 2024(b)(1) was for an offense that categorically "involves fraud or deceit" within the meaning of 8 U.S.C. § 1101(a)(43)(M). Mowlana was therefore convicted of an aggravated felony and subject to removal. The petition for review is denied.

BEAM, Circuit Judge, concurring.

I concur in the result reached by the court but disagree with the route followed in reaching its conclusion. Thus, I would also affirm the BIA.

Mowlana, a native of Somalia, was granted refugee status in December 2000 and became a permanent resident of the United States in October 2002. In 2005, Mowlana opened a grocery store in St. Louis, Missouri, called Tawakal Grocery Store (Tawakal). In October 2010, the federal government indicted Mowlana for several

---

[3]Citing *Corder v. United States*, 107 F.3d 595 (8th Cir. 1997), Mowlana also suggests that a store owner may be convicted under § 2024(b) without even knowing that a store employee illegally sold benefits for cash. Our decision in *Corder*, however, concerned only the propriety of civil monetary sanctions against a store owner, and overturned the fine imposed in that case. *Id*. at 598. The Supreme Court in *Liparota* held that a criminal conviction under § 2024(b) requires proof that an offender knew his conduct was contrary to law, 471 U.S. at 433, and *Corder* is not to the contrary.

counts related to Tawakal's participation in the food stamp program. Mowlana ultimately pleaded guilty to count three, which alleged that he "knowingly used, transferred, acquired, and possessed" food stamp benefits in a manner that he knew to be illegal, in violation of 7 U.S.C. § 2024(b)(1). Mowlana was subsequently ordered to pay approximately $206,000 to the United States Department of Agriculture as restitution for this obviously fraudulent activity. The count three conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i) making him subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Thus, his petition for review should be denied.

Notwithstanding the ubiquitousness of § 2024's crime rehearsing language (and court precedent highlighting the statute's broad application), the BIA argues that every violation of § 2024(b)(1) involving loss to a victim in excess of $10,000 creates a categorical crime containing a measure of fraud and deceit sufficient to formulate an aggravated felony which formulation in turn triggers imposition of 8 U.S.C. § 1227(a)(2)(A)(iii), and its punitive sentence automatically removing Mowlana from the United States. This is error.

In reaching this conclusion, the BIA contends that 7 U.S.C. § 2024(b)(1) is a narrowly drawn indivisible statute–i.e., one not containing alternative elements–that defines a "generic crime" supporting statutory removal. Descamps v. United States, 133 S. Ct. 2276, 2281 (2013). However, § 2024(b)(1) criminalizes a broader swath of conduct than this allegedly relevant generic offense. Id. Such being the case, a "modified" categorical approach is required in this removal proceeding.

The BIA correctly concedes that "if we [the BIA] were to find 7 U.S.C. § 2024(b) to be a divisible statute, [that is find some violations that do not involve acts

of fraud and/or deceit], we would apply the modified categorical approach to determine whether the respondent has been convicted of an aggravated felony."[4]

Case precedent indicates that even though a conviction under § 2024(b)(1) requires a showing that the defendant knowingly misused food stamps, neither fraudulent nor deceitful intent are formal elements of the crime. United States v. Gettler, 46 F. App'x 858, 860 (8th Cir. 2002); see Liparota v. United States, 471 U.S. 419, 434 (1985) (defining mens rea requirement of § 2024(b)(1)). The Supreme Court recently clarified, however, that 8 U.S.C. § 1101(a)(43)(M)(i) "is not limited to offenses that include fraud or deceit as formal elements [but also includes] offenses that *involve fraud or deceit*–meaning offenses with elements that necessarily entail fraudulent or deceitful conduct." Kawashima v. Holder, 132 S. Ct. 1166, 1172 (2012) (emphasis added). Thus, as earlier noted, the categorical offense, or not, question boils down to whether each of the potential alternative versions of food stamp misuse under § 2024(b)(1) necessarily entails fraudulent or deceitful conduct. Id.

The plain language of § 2024(b)(1) contradicts the BIA's conclusion that every violation of the statute necessarily involves fraudulent or deceitful conduct. Specifically, the statute permits an individual to be convicted for merely unlawfully acquiring or possessing food stamps, regardless of whether the person ever actually exchanges the food stamps for benefits. E.g., United States v. French, 683 F.2d 1189, 1195 (8th Cir. 1982); United States v. Robinson, 680 F.2d 557, 558-59 (8th Cir. 1982). It is therefore possible to violate the statute without making any representations to the government, much less a false one. Indeed, every court to have considered the issue has concluded that it is possible to violate § 2024(b)(1) without

---

[4]Descamps states "Taylor permitted sentencing courts, as a tool for implementing the categorical approach, to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." 133 S. Ct. at 2284.

engaging in fraudulent or deceitful conduct.  See Huyen Thi Nguyen v. Holder, 494 F. App'x 727, 728 (9th Cir. 2012); Diem Thi Huynh v. Holder, 321 F. App'x 649, 651 (9th Cir. 2009);[5] United States v. Mejia-Alarcon, 995 F.2d 982, 990 (10th Cir. 1993).

The BIA, as earlier indicated, seems to concede, and correctly, that at least a small number of criminal manifestations of § 2024(b)(1) may involve prohibitions and violations not constituting aggravated felonies.  This concession is partially evidenced by the BIA's proposal to bridge any categorical crime gaps with "realistic probability" reasoning from Gonzales v. Duenas-Alvarez, 549 U.S. 183 (2007).  The BIA and this court argue that this precedent requires *Mowlana to show* a realistic probability that the federal government would prosecute a violation of the statute not involving fraud or deceit.  If it would not, says the BIA and the court, Mowlana's § 2024(b)(1) crime becomes categorically an aggravated felony that supports his removal.

I am not persuaded that the Duenas-Alvarez state-law-based, realistic probability inquiry is germane under the circumstances of this action.  The issue is not whether a food stamp transaction involving fraud or deceit accompanied by a loss to the federal government in excess of $10,000 is an aggravated felony.  It unquestionably is.  The issue is whether, as the BIA holds, every possible violation of 7 U.S.C. § 2024(b)(1) results in such an aggravated felony.  In my view, it does not. The inquiry as to whether or not 7 U.S.C. § 2024(b) defines only a generic federal crime (the violation of which always constitutes an aggravated felony if the loss exceeds $10,000) presents a question of law that this court has jurisdiction to decide. Bobadilla v. Holder, 679 F.3d 1052, 1053 (8th Cir. 2012); Recio-Prado v. Gonzales, 456 F.3d 819, 820-21 (8th Cir. 2006).

---

[5]The court's footnote 3 appears to both generally and specifically respond to this conclusion.  In doing so it explicates several unsupportable, irrelevant and incorrect interpretations of evidentiary law and their applications.  See, e.g., Fed. R. App. P. 32.1(a); 8th Cir. R. 32.1A.

Although we accord the BIA substantial deference in interpretation of statutes and regulations it administers, in removal actions we apply de novo review to all questions of law. Omondi v. Holder, 674 F.3d 793, 797 (8th Cir. 2012). Thus, we necessarily analyze the application and administration of the legislative language as it may be applied to alternative manifestations of fact advanced in a federal criminal prosecution.

In any event, in addressing this question of law, the Supreme Court has clearly not directed or permitted this court to speculate as to whether or not, a United State Attorney or even most United States Attorneys would or would not charge and prosecute a nonfelonious or nonaggravated felony violation of § 2024(b)(1), even one involving more than $10,000 worth of food stamps. Thus, the realistic probability inquiry advanced by Duenas-Alvarez and this court is not apposite in this dispute. Additionally and alternatively, the Supreme Court has explicitly held that the traditional categorical/modified categorical framework must be used to determine whether an offense involves fraud or deceit for purposes of 8 U.S.C. § 1101(a)(43)(M)(i). See Kawashima, 132 S. Ct. at 1175; Nijhawan v. Holder, 557 U.S. 29, 38-40 (2009).

Therefore, applying the teachings of Descamps and Taylor v. United States, 495 U.S. 575 (1990), we should proceed to the modified categorical approach in this case and "consult a limited class of documents, such as indictments, pleas and jury instructions, to determine which alternative[s] . . . [under § 2024(b)(1)] formed the basis [for Mowlana's] prior conviction." Descamps, 133 S. Ct. at 2281.

In the underlying criminal prosecution Mowlana pleaded guilty to count three of his indictment, which alleges that he violated § 2024(b)(1) by unlawfully using, transferring, acquiring, *and* possessing food stamps. Assuming that one unlawfully *uses* food stamps by exchanging benefits for noneligible items, we must resolve

whether this conduct necessarily involves fraud or deceit.  Kawashima, 132 S. Ct. at 1172.  It certainly seems that it would be "possible to [unlawfully use food stamps] without making any misrepresentation," particularly in circumstances where a merchant knowingly exchanges noneligible items for food stamps.  Id. at 1175; see United States v. Stencil, 629 F.2d 984, 985 (4th Cir. 1980).  In such circumstances, no misrepresentation is technically made until the merchant actually submits the benefits to the government for payment.  Cf. Ming Lam Sui v.  INS, 250 F.3d 105, 119 (2nd Cir. 2001).

It strikes me, however, that one who actually *uses* food stamps to purchase items necessarily does so with the knowledge that the retailer will, in its ordinary course of business, present the benefits to the government "for payment or redemption." 7 U.S.C. § 2024(c).  In other words, to unlawfully *use* food stamps, one must engage in an illegal transaction in which she knows the fruits of which will be presented to the government as a legitimate transaction in the ordinary course of the retail store's business.  See Liparota, 471 U.S. at 435 (defining mens rea requirement of § 2024(b)(1)).  Common sense therefore suggests that illegal use of food stamps in this case necessarily entailed fraud or deceit.

Although Mowlana correctly argues that a conviction for food stamp misuse under 7 U.S.C. § 2024(b)(1) does not categorically involve fraud or deceit, application of the modified categorical approach reveals that he was convicted under a version of the offense that necessarily involves fraudulent or deceitful conduct. Accordingly, the BIA's decision should be affirmed.

_____