BEAM, Circuit Judge,
concurring.
I concur in the result reached by the court but disagree with the route followed in reaching its conclusion. Thus, I would also affirm the BIA.
Mowlana, a native of Somalia, was granted refugee status in December 2000 and became a permanent resident of the United States in October 2002. In 2005, Mowlana opened a grocery store in St. Louis, Missouri, called Tawakal Grocery Store (Tawakal). In October 2010, the federal government indicted Mowlana for several counts related to Tawakal’s partic *929 ipation in the food stamp program. Mow-lana ultimately pleaded guilty to count three, which alleged that he “knowingly used, transferred, acquired, and possessed” food stamp benefits in a manner that he knew to be illegal, in violation of 7 U.S.C. § 2024(b)(1). Mowlana was subsequently ordered to pay approximately $206,000 to the United States Department of Agriculture as restitution for this obviously fraudulent activity. The count three conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(48)(M)(i) making him subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Thus, his petition for review should be denied.
Notwithstanding the ubiquitousness of § 2024’s crime rehearsing language (and court precedent highlighting the statute’s broad application), the BIA argues that every violation of § 2024(b)(1) involving loss to a victim in excess of $10,000 creates a categorical crime containing a measure of fraud and deceit sufficient to formulate an aggravated felony which formulation in turn triggers imposition of 8 U.S.C. § 1227(a)(2) (A) (iii), and its punitive sentence automatically removing Mowlana from the United States. This is error.
In reaching this conclusion, the BIA contends that 7 U.S.C. § 2024(b)(1) is a narrowly drawn indivisible statute — i.e., one not containing alternative elements— that defines a “generic crime” supporting statutory removal. Descamps v. United States, — U.S. -, 133 S.Ct. 2276, 2281, 186 L.Ed.2d 438 (2013). However, § 2024(b)(1) criminalizes a broader swath of conduct than this allegedly relevant generic offense. Id. Such being the case, a “modified” categorical approach is required in this removal proceeding.
The BIA correctly concedes that “if we [the BIA] were to find 7 U.S.C. § 2024(b) to be a divisible statute, [that is find some violations that do not involve acts of fraud and/or deceit], we would apply the modified categorical approach to determine whether the respondent has been convicted of an aggravated felony.”[4]
Case precedent indicates that even though a conviction under § 2024(b)(1) requires a showing that the defendant knowingly misused food stamps, neither fraudulent nor deceitful intent are formal elements of the crime. United States v. Gettler, 46 Fed.Appx. 858, 860 (8th Cir.2002); see Liparota v. United States, 471 U.S. 419, 434, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (defining mens rea requirement of § 2024(b)(1)). The Supreme Court recently clarified, however, that 8 U.S.C. § 1101(a)(43)(M)(i) “is not limited to offenses that include fraud or deceit as formal elements [but also includes] offenses that involve fraud or deceit — meaning offenses with elements that necessarily entail fraudulent or deceitful conduct.” Kawashima v. Holder, — U.S. -, 132 S.Ct. 1166, 1172, 182 L.Ed.2d 1 (2012) (emphasis added). Thus, as earlier noted, the categorical offense, or not, question boils down to whether each of the potential alternative versions of food stamp misuse under § 2024(b)(1) necessarily entails fraudulent or deceitful conduct. Id.
The plain language of § 2024(b)(1) contradicts the BIA’s conclusion that every violation of the statute necessarily involves fraudulent or deceitful conduct. Specifically, the statute permits an individual to be convicted for merely unlawfully acquiring or possessing food stamps, regardless of whether the person ever actually ex *930 changes the food stamps for benefits. E.g., United States v. French, 683 F.2d 1189, 1195 (8th Cir.1982); United States v. Robinson, 680 F.2d 557, 558-59 (8th Cir.1982). It is therefore possible to violate the statute without making any representations to the government, much less a false one. Indeed, every court to have considered the issue has concluded that it is possible to violate § 2024(b)(1) without engaging in fraudulent or deceitful conduct. See Huyen Thi Nguyen v. Holder, 494 Fed.Appx. 727, 728 (9th Cir.2012); Diem Thi Huynh v. Holder, 321 Fed. Appx. 649, 651 (9th Cir.2009);[5] United States v. Mejia-Alarcon, 995 F.2d 982, 990 (10th Cir.1993).
The BIA, as earlier indicated, seems to concede, and correctly, that at least a small number of criminal manifestations of § 2024(b)(1) may involve prohibitions and violations not constituting aggravated felonies. This concession is partially evidenced by the BIA’s proposal to bridge any categorical crime gaps with “realistic probability” reasoning from Gonzales v. Duenas-Alvarez, 549 U.S. 183, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007). The BIA and this court argue that this precedent requires Mowlana to show a realistic probability that the federal government would prosecute a violation of the statute not involving fraud or deceit. If it would not, says the BIA and the court, Mowlana’s § 2024(b)(1) crime becomes categorically an aggravated felony that supports his removal.
I am not persuaded that the Duenas-Alvarez state-law-based, realistic probabili-. ty inquiry is germane únder the circumstances of this action. The issue is not whether a food stamp transaction involving fraud or deceit accompanied by a loss to the federal government in excess of $10,000 is an aggravated felony. It unquestionably is. The issue is whether, as the BIA holds, every possible violation of 7 U.S.C. § 2024(b)(1) results in such an aggravated felony. In my view, it does not. The inquiry as to whether or not 7 U.S.C. § 2024(b) defines only a generic federal crime (the violation of which always constitutes an aggravated felony if the loss exceeds $10,000) presents a question of law that this court has jurisdiction to decide. Bobadilla v. Holder, 679 F.3d 1052, 1053 (8th Cir.2012); Recio-Prado v. Gonzales, 456 F.3d 819, 820-21 (8th Cir.2006).
Although we accord the BIA substantial deference in interpretation of statutes and regulations it administers, in removal actions we apply de novo review to all questions of law. Omondi v. Molder, 674 F.3d 793, 797 (8th Cir.2012). Thus, we necessarily analyze the application and administration of the legislative language as it may be applied to alternative manifestations of fact advanced in a federal criminal prosecution.
In any event, in addressing this question of law, the Supreme Court has clearly not directed or permitted this court to speculate as to whether or not, a United State Attorney or even most United States Attorneys would or would not charge and prosecute a nonfelonious or nonaggravated felony violation of § 2024(b)(1), even one involving more than $10,000 worth of food stamps. Thus, the realistic probability inquiry advanced by Duenas-Alvarez and this court is not apposite in this dispute. Additionally and alternatively, the Supreme Court has explicitly held that the traditional categorical/modified categorical framework must be used to determine *931 whether an offense involves fraud or deceit for purposes of 8 U.S.C. § 1101(a)(43)(M)(i). See Kawashima, 132 S.Ct. at 1175; Nijhawan v. Holder, 557 U.S. 29, 38-40, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009).
Therefore, applying the teachings of Descamps and Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), we should proceed to the modified categorical approach in this case and “consult a limited class of documents, such as indictments, pleas and jury instructions, to determine which alternative^] ... [under § 2024(b)(1)] formed the basis [for Mowlana’s] prior conviction.” Descamps, 133 S.Ct. at 2281.
In the underlying criminal prosecution Mowlana pleaded guilty to count three of his indictment, which alleges that he violated § 2024(b)(1) by unlawfully using, transferring, acquiring, and possessing food stamps. Assuming that one unlawfully uses food stamps by exchanging benefits for noneligible items, we must resolve whether this conduct necessarily involves fraud or deceit. Kawashima, 132 S.Ct. at 1172. It certainly seems that it would be “possible to [unlawfully use food stamps] without making any misrepresentation,” particularly in circumstances where a merchant knowingly exchanges noneligible items for food stamps. Id. at 1175; see United States v. Stencil, 629 F.2d 984, 985 (4th Cir.1980). In such circumstances, no misrepresentation is technically made until the merchant actually submits the benefits to the government for payment. Cf. Ming Lam Sui v. INS, 250 F.3d 105, 119 (2nd Cir.2001).
It strikes me, however, that one who actually uses food stamps to purchase items necessarily does so with the knowledge that the retailer will, in its ordinary course of business, present the benefits to the government “for payment or redemption.” 7 U.S.C. § 2024(c). In other words, to unlawfully use food stamps, one must engage in an illegal transaction in which she knows the fruits of which will be presented to the government as a legitimate transaction in the ordinary course of the retail store’s business. See Liparota, 471 U.S. at 435, 105 S.Ct. 2084 (defining mens rea requirement of § 2024(b)(1)). Common sense therefore suggests that' illegal use of food stamps in this case necessarily entailed fraud or deceit.
Although Mowlana correctly argues that a conviction for food stamp misuse under 7 U.S.C. § 2024(b)(1) does not categorically involve fraud or deceit, application of the modified categorical approach reveals that he was convicted under a version of the offense that necessarily involves fraudulent or deceitful conduct. Accordingly, the BIA’s decision should be affirmed.

. Descamps states "Taylor permitted sentencing courts, as a tool for implementing the categorical approach, to examine a limited class of documents to determine which of a statute’s alternative elements formed the basis of the defendant’s prior conviction.” 133 S.Ct. at 2284.

. The court's footnote 3 appears to both generally and specifically respond to this conclusion. In doing so it explicates several unsupportable, irrelevant and incorrect interpretations of evidentiary law and their applications. See, e.g., Fed. R.App. P. 32.1(a); 8th Cir. R. 32.1 A.